# CASES

IN THE

# SUPREME COURT OF ALABAMA.

## NOVEMBER TERM, 1906-1907.

## Sherrill *v.* Louisville & Nashville R. R. Co.

*Action for Damges for Destruction of Property by Fire.*

(Decided January 15, 1905. 38 So. Rep. 1028.)

1. *Railroads; Operation of Trains; Emission of Sparks; Improper Appliances.*—The emission of sparks by a locomotive in unusual or dangerous quantities or of unusual size tends to show, either the improper construction of the locomotive, or the improper construction of its spark arresting appliances, or its improper or negligent operation.

2. *Same; Evidence.*—It is competent to show, in cases of this character, that the locomotive, at the time of its passage, was emitting sparks in unusual and dangerous quantities and unusual size than is emitted by locomotives generally.

3. *Same; Comparative Evidence.*—A witness who had an opportunity to observe it, may not only testify that the particular locomotive was emitting sparks in unusual and dangerous quantities and of unusual size, but that the locomotive in question was on that occasion, exceeding, in these respects, other locomotives passing that point about that time.

4. *Appeal; Harmless Error; Subsequent Course of Trial.*—Where error is cured by the subsequent course of the trial, it is rendered harmless error.

5. *Appeal; Review; Presumptions.*—In the absence of a showing that the bill of exceptions contains all the evidence adduced upon the trial, no presumption is raised in support of the

courts rulings on the admission of evidence, but it will be pre-
sumed that the court correctly ruled as to the affirmative
charge, and as to charges relating to the weight of the whole
evidence.

6.  *Trial; Instructions Argumentative.*—The trial court will not be
put in error for refusing argumentative charges.

7.  *Railroads; Operation of Trains; Care Required; Instructions.*—
An instruction asserting that the defendant was required to
"exercise the utmost care" in running through a town or vil-
lage, etc., requires a too high degree of care and its refusal
was proper.

8.  *Same; Emission of Sparks; Presumption; Instruction.*—A charge
asserting that the emission of sparks in unusual quantities
or of unusual size, is evidence sufficient to raise the presump-
tion of negligence, and throw upon defendant company the
burden of removing such presumption, pretermitting, as it
does, the communication of fire to adjacent property by such
emission, is bad and its refusal correct.

9.  *Trial; Instructions; Invading Province of Jury.*—A charge is
properly refused that asserts that there is no evidence show-
ing positive acts of negligence.

10. *Same; Effect of Evidence.*—A charge that it is not evidence of
negligence that sparks were thrown straight up for thirty-
five feet, or that they appeared to be as large as the ends of
the finger of a person standing near the track, was properly re-
fused.

APPEAL from Morgan Circuit Court.

Heard before Hon. O. KYLE.

·Action by appellant aginst appellee for destroying a
building and its contents by fire alleged to have origi-
nated from  sparks emitted  from defendant's  engine,
while defendant was operating an engine and train of
cars through  Hartselle, an  incorporated  town. The
building and contents alleged to have been destroyed are
fully described in each count.  The complaint contained
seven counts.  The first count declared that the defend-
ant carelessly  and  negligently  destroyed  plaintiff's
building and contents by fire communicated from an en-
gine being operated by defendants through said town.
The second count laid the negligence to the servants or
agents of defendant in operating said engine.  The third
count declares upon the negligence of the defendant's
servants or agents in charge of a train of engine and

cars, in running a train through the town of Hartselle at a high and rapid rate of speed, with throttle and steam wide open and turned on full, thereby causing said engine to emit fire and sparks of an unusual quantity and larger than ordinary size. The negligence laid in the fourth count was the use by the defendant of engines and appliances which were defective and insufficient, and permitted sparks and fire in unusual quantities and large and dangerous size to be emitted setting fire to the property of plaintiff. The fifth count declared that defendant, through and by its agents and servants so carelessly and negligently operated its engines as to permit sparks and fire to be emitted in large numbers and unusual size setting fire to plaintiffs property and destroying it. The sixth count alleges that the servants or agents of the defendant were acquainted with the character and locations of the buildings burned, their proximity to the track, and that the wind was right, giving its direction, to set fire onto the buildings, which fact was also known to the said servants and agents, and notwithstanding this fact and knowledge they so carelessly and negligently ran and operated said engine as to cause it to emit sparks etc., setting fire etc. Count A. alleges that defendant negligently caused or allowed plaintiff's property to be set on fire and destroyed by means of its locomotive. The testimony tended to show that the plaintiff owned a building and its contents in the town of Hartselle, that it and other buildings of like character faced the defendants right of way through said town, and were a short distance away. That they were of wood, that the weather was dry at that time and had been for a long time. That all the buildings along the row were of wood and covered with wooden shingles or boards, the boards on some of the buildings being old and weather worn.

That about thirty or forty minutes after a certain engine and train of cars had passed the point where the fire occurred, it was discovered that two of the buildings were on fire, and that the fire was communicated to and destroyed the building of plaintiff, together with its entire contents. That the building and its contents were worth about $1,200.00. That the wind was blow-

ing from the track towards the buildings. It further tended to show that the engine and train of cars which passed before the fire some thirty or forty minutes was steaming ahead about forty miles per hour, and was emitting sparks in large quantities and of unusual size, and throwing them about fifty feet in the air. Witness Nichols testified that he saw the last freight train pass before the fire was discovered, and was in the depot at the time. That he saw the engine about a quarter of a mile before it reached the town, and until it was two or three hundred yards past the town. That it was emitting sparks in unusual quantities and size. That his attention was directed to it by the operator in the depot. The plaintiff then asked the witness did or not you see other engines, at about that time, coming through the town emitting sparks. The defendant objected to the question. It was admitted that the engine passing the town about thirty or forty minutes before the fire was engine No. 903. The objection was predicated upon the fact that it was not shown that the other engines enquired about were being operated under like conditions and surroundings. The objection was sustained, and plaintiff excepted. The plaintiff then asked the witness "Did the other engines that passed through that night throw as many sparks or as large sparks as this engine?" The court sustained an objection to the question. The plaintiff also reserved exceptions to the action of the court in refusing to permit it to ask the witness "whether or not at any time you ever saw engines throw as many sparks or as large sparks as this engine."

Plaintiff excepted to the action of the court in allowing defendant to ask the following questions of its witnesses: "Could that engine properly perform its functions and the purposes for which it is engaged with a smaller netting than what is known as standard netting shown you, and which has been said was in this engine. What was its speed compared with other freight trains? What did engine No. 903 have if anything, to prevent the escape of sparks? What was its condition? Is this netting used in the engine such as is adopted for the prevention of the escape of sparks? was the engineer a competent man to run this engine?"

The plaintiff requested the following charges, which were refused:—D. The defendants are required to exercise the utmost care in running through a town or village where buildings are constructed of wood, and are situated so near to their road as to be exposed to fire that may come in large and dangerous quantities from their locomotives; and especially so, if at the time, the wind was blowing in the direction from the engine towards the buildings. Under such circumstances the defendants are bound to greater degree of care than would be required of them when running trains in the country, where there is no property near their track exposed to fire. E. The emission of sparks in unusual quantities or of unusual size is evidence sufficient to raise the presumption of negligence, and throw upon the defendant company the burden of removing such presumption.

The following charges were given at the request of the defendant:—1. I charge you, gentlemen of the jury, there is no evidence before you showing positive acts of negligence on the part of the defendant. 29. It is not evidence of negligence on the part of the defendant that sparks were thrown straight up for thirty-five feet, or that they appeared to be as large as the end of a finger of the person standing near the track as the train passed. 30. If you believe from the evidence that the fire broke out or was discovered about thirty to thirty-five minutes after the passage of the engine No. 903, and that when said engine passed through said Hartselle it was emitting sparks 30 to 35 feet high, and that the wind was blowing in a general direction of the buildings from the railroad, then I charge you that the lapse of such space of time would not raise a presumption that said fire could have arisen from said sparks.

Other charges were asked not necessary to be here set out. There was verdict for defendant, and plaintiff brings this appeal.

JOHN R. SAMPLE, and S. A. LYNNE, for appellant.

GEORGE W. JONES, and JOHN C. EYSTER, for appellee.

McCLELLAN, C. J.—The emission of sparks from a locomotive in unusual and dangerous quantities, and of unusually large size is evidence tending to show that either the locomotive was improperly constructed, or that its appliances for arresting sparks are not in proper condition, or that it was improperly or negligently operated at the time. In cases of this sort therefore, it is always competent to prove that the locomotive supposed to have thrown the sparks upon adjacent property, and thereby set fire to it, was at the time of its passage emitting sparks in greater quantities and of larger size than are emitted by locomotives generally; and not only may a witness who has had opportunity for observation in this connection testify that the particular locomotive was emitting sparks in unusual quantity and of unusual size as compared with other engines, but he may testify that the locomotive in question on that occasion was exceeding in these respects the emissions of other locomotives passing the point about the same time. The question is quite different from that discussed in the cases of *Miller* and *Malone,* (109 Ala. pp. 500, 509), where it was proposed to prove the communication of fire by sparks from engines on other occasions. In our opinion, therefore, the circuit court erred in excluding the proposed testimony of the witness Nichols tending to show that this locomotive on this occasion as it passed through the town of Hartselle was emitting a greater quantity of sparks and larger sparks than other engines he had observed about that time or other engines he had seen.

We find no error in the other rulings of the court on the competency of testimony. One or two such rulings which may have been of doubtful propriety were rendered innocuous by the subsequent course of the trial.

The bill of exceptions does not affirmatively show that all the evidence adduced on the trial is set out therein. Therefore, while this state of the record raises no presumption in support of the rulings upon the admissibility of evidence (*Batton v. Cuthbert,* 132 Ala. 403), it does raise a presumption of the correctness of the court's rulings upon request for affirmative charges, whether on the whole complaint or upon particular counts, and also

as to other charges relating to the weight of the whole evidence. Upon this consideration we pretermit further discussion of the refusal of the court to give the general charge requested by plaintiff on counts 1 and A, and also the giving of the affirmative charges requested by the defendant upon counts 2, 3, 4, 5 and 6.

Charge D, refused to plaintiff, is argumentative, and is affirmatively bad in its declaration that the defendant was "required to exercise the utmost care," etc.; if not also in other respects.

The communication of fire to adjacent property by sparks from a passing locomotive raises a presumption of negligence against the railway company; but the fact of the emission of sparks in unusual quantity and size without proof of such communication does not raise such presumption; such fact merely tends to show negligence. Charge E asked by plaintiff was properly refused.

Charge 1 for defendant should not have been given. It may have been intended to declare that there was no positive evidence of negligence, but the charge in fact declares that there was *no* evidence of *positive acts* of negligence. There was *circumstantial* evidence upon which the jury had the right to find that the engineer was guilty of "positive acts of negligence" in the manner of working his engine.

So, too, charge 29 was improperly given. To say the least it was not for the court to say that the fact that a locomotive throws sparks apparently as large as the end of a person's finger thirty-five feet high, affords no inference that the engine was improperly constructed, or in a bad condition or improperly handled, especially when there was evidence before them that a properly constructed engine in good condition and properly operated would not throw sparks of that size at all, and would not throw sparks of any size thirty-five feet high.

Charge 30 had a tendency to confuse the jury, and to mislead them to the conclusion that the burning of plaintiff's house *could* not be ascribed to the sparks because sparks *could not* have started a fire growing to the dimensions of this one when it was discovered in the

time which elapsed from the passing of this locomotive to the time of the discovery.

Several of the other charges given for defendant were faulty in directing a verdict for defendant on the jury's being reasonably satisfied that the locomotive was properly constructed and properly handled, when it was open to them to find that though there was no negligence in these respects yet it was not in proper condition, and that the fire resulted from a defective condition of the engine or its appliances to prevent the escape of dangerous sparks; and two or three of the charges given for defendant might well have been refused because argumentative.

Reversed and remanded.

HARALSON, DOWDELL and DENSON, J.J., concurring.