## Adams *v.* Corona Coal & Iron Co.

*Injury to Servant.*

(Decided May 15, 1913.  62 South. 536.)

1. *Master and Servant; Injury to Servant; Employee Engaged in Making Safe Place.*—Where a mine employee was injured by the fall of loose rock while he was engaged in clearing the hallway of such rock so as to make it safe for the use of other employees, and before knocking a prop from under such rock, which resulted in the rock falling, he sounded the roof, but it gave no evidence of being loose or otherwise unsafe, the master was not liable for the injuries, notwithstanding it was the duty of the bank boss to examine and see that the roofs of hallways were in reasonably safe condition; if the rock was loose it was the duty of the injured employee to have discovered it, and if it was not loose the bank boss was not negligent.

2. *Appeal and Error; Harmless Error; Not Affecting Result.*—Where in no event a plaintiff is entitled to recover, a judgment against him will not be reversed because of special errors committed on the trial.

Appeal from Walker Circuit Court.

Heard before Hon. J. J. Curtis.

Action by Ernest Adams against the Corona Coal & Iron Company for damages for injuries suffered while in its employment. Judgment for defendant and plaintiff appeals. Affirmed.

Gunn & Powell, for appellant. The court erred in sustaining demurrer to count 13.—*Tutwiler C. & C. Co. v. Farington,* 144 Ala. 165. Pleas 5, 6, 7, and 9 were fatally defective.—*Osborn v. Ala. S. & W. Co.,* 135 Ala. 573; *M. & B. R. R. Co. v. Harbin,* 84 Ala. 183; *H. A.*

& B. R. R. Co. v. Walker, 91 Ala. 435. Pleas 3, 8 and 10 were fatally defective.—Lockhart v. Sloss-Sheffield, 51 South. 627; Jones v. Pioneer M. & M. Co., 149 Ala. 402. Pleas 2 and 4 were mere conclusions.—Osborn v. Ala. S. & W. Co., supra. Under the evidence the jury would have been authorized to find that the superintenent had been negligent in the exercise of the superintendence, and therefore, the question became one for the jury.—T. C. I. & R. R. Co. v. Bonner, 164 Ala. 61; K. C. M. & B. v. Burton, 97 Ala. 240. The master has the burden of showing that the servant knew of the defect. —Jackson L. Co. v. Cunningham, 141 Ala. 206. See Sloss-S. S. & I, Co. v. Grune, 159 Ala. 178.

J. T. STOKELEY, and BANKHEAD & BANKHEAD, for appellee. In no event was plaintiff entitled to recover under the evidence, and hence, any special errors committed on the trial will not bring about a reversal.— Bienville W. W. Co. v. City of Mobile, 125 Ala. 178; Merriweather v. Sayre M. & M. Co., 62 South. 70.

DE GRAFFENRIED, J.—The plaintiff, while at work as a shift leader in a hallway of a coal mine of the defendant coal and iron company, sustained a dangerous and painful injury to his person. The plaintiff, acting upon the theory that his injuries were due to the actionble negligence of the defendant, or of an agent or servant of the defendant having superintendence intrusted to him, brought this suit to recover the damages which he sustained by reason of such personal injuries so received by him.

1. The plaintiff, at the time he received his injuries, was clearing a hallway of loose rock. This hallway was used by the various employees of the defendant in going to and from the mine. The hallway, at one time, con-

tained a seam of coal, but the coal had been taken out, and it was the duty of the plaintiff, as shift leader, to clear the bottom of the hallway of loose rock, and to remove from the top of the hallway all loose rock that could be removed therefrom, and to prop up such loose rock as could not be removed from the top. The plaintiff's duty, therefore, was to prepare the hallway so that it could be conveniently and safely used by the other servants of the defendant. The manner in which the plaintiff received his injuries is thus stated by the plaintiff: "I went to my place then and pulled down all of the loose rock that I could detect, and sounded the place I was to work under. It was my duty to square up that rock. It was my duty to examine the place where I was at work, and to take down or prop all the loose rock that I could find. It was my duty to examine the roof. I sounded the roof either with an ax or hammer. I examined the roof, and discovered some loose rock around the edge of the brush, but not any under the brushing. I was looking for loose rock when I examined the roof, but did not know as much about it, as some miners do. It was my duty to remove the loose rock that was left there by the day shift and to gob it on the right side. It was my duty to remove all the rock in that eight-foot space. I was working on up toward the face of the coal, with the purpose of making this haulageway a sufficient height so that the men and mules could pass through. I sounded the rock that fell on me before I went to work under it, and it sounded safe. I detected nothing about it that indicated danger. The corner of the rock that fell on me was resting on a prop. There was a double row of props between the haulageway and the gob place. Rafe was on the opposite side of the rock from where I was when I went to work. Rafe was somewhere about the rock pile when I went over to

knock that prop out. The hammer that I used to knock the prop out would weigh, in my judgment, four or five pounds. The handle to the hammer was in my judgment about 15 or 18 inches long. The reason I wanted to knock that prop down was to give myself room to throw that rock back and gob it. The space between the props was about 12 or 18 inches. After I had knocked the prop out, I would have had a space of 30 or 36 inches. The second prop next to the right rib was directly behind the one that I undertook to knock out. The coal had been taken out from under the rock. I don't know just what the height of the roof was there; we could use about 3 ft. and 10 in. timbers. I was under the rock that fell on me when I hit the prop with the hammer, the prop moved an inch or two and the rock fell on me. The prop fell out from under the rock about the time the rock fell on me. I fell with my head facing toward the gob side. The whole piece of rock fell on me. It did not break before it fell, it broke as it hit me when it fell. It was necessary to take that rock down in order to make the haulageway the necessary height, when we got to it. After I had cleaned up that gob I would have had to take that rock down or shoot it down. That was what I was there for, to pull down rock. I was considered over Rafe Agnew, my helper, and he was subject to my instructions. It would have taken myself and Rafe Agnew about two hours to have removed the rock from the roof that fell on me. After I got the rock gobbed it was my duty to take down the rock. That would have been the next rock for me to have taken down."

The evidence in the bill of exceptions tends to show that it was the duty of the bank boss to examine and see that the roofs of the hallways were in a reasonably safe condition, but the evidence of the plaintiff affirm-

[Adams v. Corona Coal & Iron Co.]

atively shows that the rock which fell on him when he knocked the prop from under it, when *sounded* by him, gave no evidence of being loose or of being otherwise unsafe. In fact the plaintiff was there that night, to remore *that particular rock,* whether loose or otherwise, and the knocking of the support from the rock was the cause of the fall. The duty of the plaintiff, on the occasion named, was to remove the rock which fell on him, and through the plaintiff, as shift leader, the defendant was, at the time of the plaintiff's injury, performing the duty which the law cast upon it, viz., to provide a safe place in which its employees could work. According to the plaintiff's own testimony if the rock was loose it was his duty to have discovered that it was loose. If it was not loose, then the bank boss could not have been negligent.

Under the evidence in this case the plaintiff was not entitled to recover. As in no event can the plaintiff prevail in this litigation, we do not consider any of the questions presented by the pleadings. "It is settled here that an appellant can never have a reversal for special errors committed on the trial from the judgment on which he appeals if in no event he could prevail in the litigation."—*America Merriweather, as Adm'x, etc., v. Sayre Mining & Manufacturing Co.,* 182 Ala. 665, 62 South. 70; *Bienville Co. v. City of Mobile,* 125 Ala. 178, 27 South. 781.

The judgment of the court below is affirmed.

Affirmed. All the Justices concur, except Dowdell, C. J., not sitting.