No. 25,669.

## A. R. Gibson, *Appellee*, v. The Midland Valley Railroad Company, *Appellant*.

### SYLLABUS BY THE COURT.

Negligence—*Loss of Eyesight from Hot Cinder from Defendant's Engine— No Reversible Error in Ruling of Court—No Contributing Negligence Shown.* In an action to recover damages for the loss of the sight of an eye from a hot cinder from one of defendant's engines, the proceedings considered, and *held,* (a) The petition sufficiently alleged the negligence on the part of defendant, which negligence was shown on the trial. (b) The evidence was sufficient to warrant the submission of the case to the jury. (c) The evidence was sufficient to support the special findings of the jury. (d) The special findings were not so inconsistent with one another or with the general verdict as to require judgment in favor of the defendant. or to set aside the general verdict. (e) There was no error in submitting to the jury the question as to whether or not defendant's engine was equipped with proper appliances and spark arresters. (f) Failure of plaintiff to procure medical assistance, under the circumstances related in the opinion, was not contributory negligence on his part, but such fact was properly considered by the jury in mitigation of plaintiff's damages. (g) It was not error to overrule the defendant's motion for a new trial and to render judgment in favor of the plaintiff.

Appeal from Cowley district court; Oliver P. Fuller, judge. Opinion filed February 7, 1925. Affirmed.

*Albert Faulconer, Kirke W. Dale, C. L. Swarts,* all of Arkansas City, and *O. E. Swan,* of Muskogee, Okla., for the appellant; *F. S. Jackson,* of Topeka, of counsel.

*W. L. Cunningham,* and *D. Arthur Walker,* both of Arkansas City, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The action was one to recover damages for injuries sustained by plaintiff to his eye caused by a hot cinder from one of defendant's engines. The plaintiff recovered and defendant appeals.

The facts were substantially as follows: Fifth street, in Arkansas City, runs north and south. The defendant's track crosses it from a northwesterly to a southeasterly direction. The plaintiff, with one Williams, was riding in an automobile going south on Fifth street. Williams was driving. As they came near the defendant's

track they saw a train approach from the south and stop near Fifth street. They did not attempt to cross the track until they saw the train start to back. Observing that the train was going to back, they crossed and turned to go in a southeasterly direction on the street next south of defendant's track. When they were about 75 or 100 feet from defendant's engine a hot cinder struck the plaintiff in the left eye. The injury was such that he eventually lost its sight.

The jury returned a general verdict in favor of the plaintiff for $2,500, and answered special questions as follows:

"Q. 1. Do you find the defendant guilty of any negligence? If so, state what act or acts constituted such negligence. A. Yes. The act of spinning the locomotive wheels in starting train.

"Q. 2. Do you find that a railroad locomotive can be operated in the handling of cars without emitting sparks and cinders? A. No.

"Q. 3. Do you find that defendant's locomotive was in good repair and equipped with proper spark arresters? If not, state in what respect it was out of repair and in what respect the spark arresters were not proper. A. No evidence to show the condition of repair on May 2, 1921. Last report as of April 27 or 26 showed spark arresters in good condition.

"Q. 4. Situated as the defendant's engineer was at the time of the transaction in controversy, would an ordinary engineer usually have anticipated danger to the person of those about to use the crossing arising out of the manner he managed the engine at the time the plaintiff claims to have received an injury to his eye? A. No. However, an engineer should know that the spinning of drive-wheels in the city might cause damage to persons or property.

"Q. 5. How long after the alleged injury before plaintiff had his eye treated by a doctor? A. Five days.

"Q. 6. Would plaintiff have suffered any permanent injury to his eye from the alleged injury had he gone immediately to a competent eye doctor for treatment, and if so state what? A. We feel he, would. As to what extent it is impossible to determine.

"Q. 7. If you find for the plaintiff, state how much you allow for permanent injury. A. $2,000; $500 for pain and suffering.

"Q. 8. Did plaintiff see and know that cinders were being exhausted before and at the time he drove upon and over the street crossing? A. We think not.

"Q. 9. Under all the circumstances shown by the evidence, would a cautious and prudent man in the position of the plaintiff, at the time plaintiff drove upon and over the crossing, seeing the locomotive as it was then being operated, have anticipated an injury to plaintiff. A. No.

"Q. 10. Is the present condition of plaintiff's eye due to an infection, as testified to by Doctor Spain? A. We think it is due to the original injury."

It is first contended by the defendant that the act of negligence

found by the jury was not the negligence charged in the plaintiff's petition. No copy of the petition appears in the abstract, but the plaintiff, in a counter-abstract, sets out a charge of negligence:

"The plaintiff claims that the 'defendant, although it knew that this plaintiff was . . . near to said locomotive, and knew the danger to this plaintiff of emitting large sparks and live coals and cinders from said locomotive, carelessly and negligently and without any regard to the right of this plaintiff, applied steam to said locomotive and started the same, and carelessly and negligently, and without any regard to the right of this plaintiff, caused, permitted and allowed said locomotive to throw out a great quantity of large live sparks, cinders and coals, causing said live sparks, cinders and coals to strike and fall beyond the right of way of the defendant, and on the highway aforesaid, to the damage of this plaintiff and the traveling public on said highway, and causing one thereof to fall in the left eye of this plaintiff, burning the same so that the sight thereof was entirely lost and destroyed, and causing this plaintiff to suffer great and intense pain, etc.' "

There appears to have been no motion by the defendant attacking the charge of negligence, and under the circumstances it was sufficient. (*Kirkland v. Railway Co.*, 104 Kan. 388, 179 Pac. 362; 29 Cyc. 570.)

On the question of the spinning of the wheels, and as to whether the negligence found by the jury supported the charge, there was substantial evidence that the engineer reversed his engine and opened the throttle—he said, "enough to move the train." There was substantial evidence that the engineer "started up fast," that the wheels were spinning and the engine made "loud puffs" . . . "the slipping of the wheels make the draft sharper, . . . this has a tendency to throw out sparks; that . . . when the wheels spin the exhaust is more rapid and greater draft created; . . . the more rapid the exhaust the more suction there is." The defendant says, "When boiled down the testimony simply amounts to this: that the wheels of the engine slipped and this causes more cinders to be thrown out on the start."

Even at the risk of repetition, it may not be amiss to detail some of the evidence. Some of it was: "We could see cinders falling and hear them. The cinders were as big as peas or bigger, just a fog of them . . . Could hear them light above the sound of our running motor."

The defendant's engineer in charge of the engine testified that he "had 10 cars—8 loads and 2 empties; . . . the track was down grade towards the depot (the direction in which he was backing); . . . there was nothing in the track condition to warrant the

spinning wheels; . . . the track was straight; . . it was not necessary to slip the wheels in backing. . . . I don't know whether I let the wheels slip or not. I might have done it, but there was no occasion for it. It is possible to operate an engine, properly equipped, so that it will not throw out live coals and cinders as big as these grains of corn and peas here which will travel with the wind something like 70 to 100 feet, and light while they are red hot."

Williams testified: "A sluice of cinders came out of the engine. They were hot; could hear the cinders drop on top of the automobile and see them bounce off the radiator. . . . The cinders were red, bright red, fresh hot cinders. . . . Q. As you started to cross the track what did the engine or engineer do? A. He started to back up and the wheels started to spin. Q. Just when did the wheels start to spin? A. When he started to back up. . . . The engine puffed and wheels spun a little bit, then ceased a little bit, then started again. The puffing was loud and continued. . . . The engineer could see us. There was nothing to obstruct his view as we approached the crossing."

A witness for defendant identified the spark arrester on the engine in question, and testified that "A cinder will go through there (the spark arrester) as big as a dollar, and that a piece of wood exhibited to the witness three-sixteenth of an inch thick and one and one-half inches wide would go through the spark arrester. . . . The opening in the spark arrester is a little under a quarter of an inch wide, just a shade under, and one and a half inches long." The same witness testified that "The openings on a standard spark arrester would be three-sixteenths by three-quarters of an inch."

. Gibson testified that when he threw his hand to his eye he got the cinder, "something came out in my fingers, felt it. . . . I held it (my eyelid) down. . . . . . finally let it loose and my eyeball went back up, thrust the cinder up to the top and burned another place. There were two burned places on my eyeball and one on the lid. The blister was about the size of my thumb nail. Covered greater portion of pupil."

The plaintiff's wife testified: "I washed the particles out with a cloth, and one of them was a little larger than the other four. I took it between my finger and thumb and rolled it. I could tell it was a piece of cinder. A blister about the size of my finger nail covered dark part of eye and part of white. I applied treatments through the day and part of the night. Mr. Gibson suffered intense-

Gibson v. Railroad Co.

pain. He sat by the stove and wrung towels out and put them on his eye himself. The greater part of the time he could not sleep. He moaned and groaned. For about two or three weeks he slept very little. He kept me awake most of the night. He was sitting up bathing his eye."

The defendant contends that the plaintiff was guilty of contributory negligence because of failure and neglect to promptly procure the services of a doctor. Among other things there was this evidence: "I expect my wife telephoned twenty times for a doctor. Mr. Baird tried to get a doctor at Wichita and went over to the hospital. I tried to get a doctor the day of the accident. I could not get him; the next day I tried to get a doctor there; there was a Shriner's— they had something doing—and could not get him."

Doctor Spain testified: "Gibson used the ordinary common remedy. I told Mr. and Mrs. Gibson after they told me what they had done that they were doing the right thing and that they should continue using hot applications along with the medicine. . . . I think it was a burn there on his eye. I think he can't much more than distinguish light, probably count the fingers. I think he had practically no vision. In my judgment it was a wound caused by a hot cinder."

The failure to sooner procure medical assistance was not contributory negligence. It could have been and was properly considered by the jury in mitigation of plaintiff's damages.

Further detailing of the evidence would serve no useful purpose. It was abundant to support the general verdict and special findings of the jury.

The defendant complains of the failure of the court to sustain its motion for judgment on the special findings. The general verdict and special findings were not inconsistent nor did the special findings warrant a judgment in favor of the defendant.

It is contended that the verdict was excessive and was based on conjecture. We cannot concur in that view. The evidence showed that the track was straight and down grade; that there was no necessity for spinning the wheels; that the train load was only approximately one-third of the locomotive's capacity; that the track was not wet or slippery; that to apply sufficient power to cause the spinning of the wheels was dangerous, had a tendency to draw live coals and cinders from the fire-box and throw them out in larger quantities and to a greater distance.

Various other complaints that the trial court erred in overruling defendant's demurrer to the evidence, in refusing to instruct the jury to return a verdict for the defendant, in misdirecting the jury, in rendering judgment for the plaintiff and overruling defendant's motion for new trial, have all been carefully considered, but we are unable to find any error which would warrant a reversal of the judgment. Many cases cited by the defendant have been examined, but are not applicable to the facts here. (See *Culp v. A. & N. Rld. Co.,* 17 Kan. 475; *Crecelius v. Railway Co.,* 92 Kan. 91, 139 Pac. 1177; *Root v. Street Railway Co.,* 96 Kan. 694, 153 Pac. 550; *I. C. R. R. Co. v. Bailey,* 222 Ill. 480; *McMullen v. Chicago & N. W. Ry. Co.,* 101 Fed. 66; 2 Thompson on Negligence, 2d ed. § 2293; *Field v. N. Y. C.,* 32 N. Y. 339; *L. & N. Ry. Co. v. Taylor,* 17 S. W. 198; *Philadelphia & R. Ry. Co. v. Young,* 90 Fed. 709; *Lehigh Valley Railroad Co. v. McKeen,* 90 Pa. St. 122; *Arey v. Railway Co.,* 170 S. W. 802; *L. & N. R. v. Haggard,* 170 S. W. 956; *Brusberg v. M. L. S. & W. Ry. Co.,* 12 N. W. 416; *Sherrell v. L. & N. R. Co.,* 148 Ala. 1; *L. & N. R. Co. v. Samuels,* 57 S. W. 235; *Burke v. Manhattan R. Co.,* 13 Daly [N. Y.] 75.)

The judgment is affirmed.