### STEPHENS v. WALKER. (6 Div. 9.)

Supreme Court of Alabama. May 10, 1928.

**1. Appeal and error ⟨key⟩903—Bill of exceptions is construed most strongly against exceptor.**

A bill of exceptions is construed most strongly against the exceptor so as to sustain the trial court's ruling.

**2. Appeal and error ⟨key⟩907(4)—On failure of bill of exceptions to show that it contains all evidence, evidence will be presumed to uphold judgment.**

Where the bill of exceptions fails to show that it contains all the evidence, the state of the evidence will be presumed to uphold the judgment, or rule of the trial court in the giving or refusing of general affirmative instructions.

**3. Appeal and error ⟨key⟩662(2)—Employment of words implying omission of evidence did not overcome positive recital in bill of exceptions that all evidence was included.**

Employment in bill of exceptions of such words as "these or those two buildings," "this property," "beyond this," that "gasoline filling station," and others, does not reasonably imply such omission of evidence, as pictures and diagrams, as to overcome positive recital that all evidence adduced on trial was included in bill of exceptions.

**4. Bankruptcy ⬤⇒303(3)—Agreement of counsel as to right to maintain personal injury suit against trustee in bankruptcy dispensed with other proof.**

Agreement of counsel as to right to maintenance of personal injury suit against trustee in bankruptcy, containing admission that defendant was operating as trustee, *held* sufficient to dispense with other proof as to such right as naturally implying his operation as such trustee with due authority at time of injury.

**5. Explosives ⬤⇒7—Cause of gasoline explosion, together with question whether person injured was properly on premises and defendant's negligence, held for jury.**

In action for damages for wrongful death of plaintiff's intestate, alleged to have resulted from injury received in explosion of gasoline, caused by negligence of defendant's employees, evidence relative to whether deceased was properly on defendant's property as an invitee, cause of explosion resulting in injury, and defendant's responsibility for negligent condition, or act proximately causing injuries, *held* sufficient to require submission to jury.

**6. Negligence ⬤⇒32(2)—Boy on employer's premises at invitation of employee for whom he was working for purpose of receiving pay held an "invitee."**

A boy injured while on employer's premises at invitation of employee for whom he was working, in order to receive his pay for work done for defendant, became an "invitee" while on premises for such purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invitation.]

**7. Explosives ⬤⇒7—Truck driver's testimony as to instructions relative to driving truck held improperly admitted in action for death from injuries by explosion of gasoline while filling truck.**

In action for wrongful death resulting from injuries received in gasoline explosion while filling truck, testimony of truck driver relative to orders or instructions of employer about who should drive trucks *held* improperly admitted, as being res inter alios acta as to plaintiff's cause of action.

**8. Witnesses ⬤⇒268(1)—Cross-examination as to invitation to deceased to come on premises at time he was injured held improperly excluded, as responsive to defendant's testimony.**

In action for wrongful death alleged to have resulted from injury received by deceased from explosion of gasoline while filling truck, cross-examination relative to deceased's having been told to go on defendant's premises to receive pay for services previously rendered and relative to raising objections to deceased's working on premises *held* improperly excluded, where defendant had shown that deceased had been given instructions about hanging around premises and to stay out of the office.

**9. Appeal and error ⬤⇒1029—Error affecting party not entitled to succeed will not work reversal.**

If there is error affecting a party not entitled to succeed in a suit, such error will not work a reversal, as where the general affirmative charge was due such party.

**10. Bankruptcy ⬤⇒283, 319—Claim ex delicto arising out of trustee's operation of bankrupt estate held enforceable to judgment against trustee and provable against estate of bankrupt (28 USCA § 125).**

28 USCA § 125, relative to suit by or against receivers or manager of property, appointed by court, applying also to trustee in bankruptcy, claim ex delicto arising out of trustee's operation of trust estate, *held* enforceable to judgment against trustee and provable against estate of bankrupt, subject to jurisdiction and powers of bankruptcy court.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action for damages by Z. L. Stephens, as administrator of the estate of James Henry Stephens, deceased, against H. H. Walker, as trustee in bankruptcy of the estate of the Jefferson Dairy Company, for wrongful death of intestate. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Jacobs & Carmack, of Birmingham, for appellant.

The scintilla rule applies in this state. London, etc., v. McCree, 213 Ala. 534, 105 So. 904. The question as to the cause of the explosion should have gone to the jury. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Jones v. Bell, 201 Ala. 336, 77 So. 998. Intestate was not a trespasser, but, as a matter of law, it is immaterial whether he was or not. 29 Cyc. 443; Herrick v. Wixom, 121 Mich. 384, 80 N. W. 117, 81 N. W. 333. The trustee may be sued for tort in the state courts. A. B. & A. v. McGill, 194 Ala. 186, 69 So. 874; U. S. Comp. St. 1047, 1048; Code Ala. 1923, § 10117; In re Smith (D. C.) 121 F. 1014; In re Spitzer (C. C. A.) 130 F. 879; In re Russell & Birkett (C. C. A.) 101 F. 251; In re Kanter & Cohen (C. C. A.) 121 F. 984; 34 Cyc. 445–447; Hershy Choc. Co. v. Sharpe, 199 Ala. 21, 74 So. 34.

London, Yancey & Brower, and Whit Windham, all of Birmingham, for appellee.

No liability against the trustee as such, in continuing the business of the bankrupt, could arise, in absence of instructions from the bankrupt court to continue said business. McAuley v. Jackson, 165 App. Div. 846, 151 N. Y. S. 120; Decillis v. Mascelli, 152 App. Div. 304, 136 N. Y. S. 573; Bankruptcy Act, c. II, § 2, So. 5; 1 Collier on Bankruptcy (13th Ed.) 83; In re Burkhalter & Co. (D. C.) 182 F. 353; In re Restein (D. C.) 162 F. 986. The Bankruptcy Act provides for ascertaining of liabilities of the bankrupt estate and fixing order of preference. Guarantee T. & T. Co. v. Title Guaranty & T. Co., 224 U. S. 152, 32 S. Ct. 457, 56 L. Ed. 706; Robertson v. Howard, 229 U. S. 254, 33 S. Ct. 854, 57 L. Ed. 1174;

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

U. S. F. & G. Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055. The bankrupt estate is not liable for a claim ex delicto and not resulting in the enrichment of the estate and not reduced to judgment prior to bankruptcy. Schall v. Camors, 251 U. S. 239, 40 S. Ct. 135, 64 L. Ed. 247; Lewis v. Roberts, 267 U. S. 467, 45 S. Ct. 357, 69 L. Ed. 739, 37 A. L. R. 1440. Any claim alleged to be a charge or a part of the cost of administering an estate is rightly heard and determined only in the court which is administering the estate. Taber v. Royal Ins. Co., 124 Ala. 681, 26 So. 252; U. S. F. & G. Co. v. Bray, supra; In re Montevallo Min. Co. (D. C.) 2 F.(2d) 979; 7 C. J. 258. Where the bill of exceptions fails affirmatively to show that it contains all the evidence, any state of the evidence will be presumed to uphold the rulings of the trial court in giving or refusing the affirmative charge. Beard v. Du Bose, 175 Ala. 411, 57 So. 703, 63 So. 318; Ventress v. Clayton, 165 Ala. 349, 51 So. 763; Sherrill v. L. & N. R. Co., 148 Ala. 1, 44 So. 153; Wolf v. Do ex dem. Delage, 150 Ala. 445, 43 So. 856. Error, if any, affecting a party not entitled to succeed in any event, is harmless, and will not work a reversal. Sands v. L. & N., 156 Ala. 323, 47 So. 323; Chandler v. Pope, 205 Ala. 49, 87 So. 539; Ala. Red Cedar Co. v. Tenn. Valley Bank, 200 Ala. 622, 76 So. 980. Where the party complaining made no statement as to what he expected to elicit, the sustaining of an objection to a question is not reversible error. Sloss Co. v. Sharp, 156 Ala. 284, 47 So. 279. Sustaining a general objection to a question will be sustained on appeal if the ruling can be justified on any valid ground. Jefferson v. Republic I. & S. Co., 208 Ala. 143, 93 So. 890.

THOMAS, J. The suit is for personal injury caused by the negligence of defendant's servants, agents or employees of the trustee in bankruptcy in temporary operation of business of the estate of the bankrupt corporation.

The general affirmative charge was given for defendant on request therefor in writing. The recitals in the bill of exceptions are sufficient to present for review that ruling.

[1-3] A bill of exceptions is construed most strongly against the exceptor so as to sustain the trial court's ruling. Ill. Cent. R. Co. v. Posey, 212 Ala. 10, 101 So. 644; First Nat. Bank v. Meeks, 208 Ala. 534, 94 So. 527; Belton v. State, 212 Ala. 265, 102 So. 220. Where the bill of exceptions fails to show that it contains all the evidence, the state of the evidence will be presumed to uphold the judgment, or ruling of the trial court in the giving or refusing of general affirmative instruction. Beard v. Du Bose, 175 Ala. 411, 57 So. 703, 63 So. 318; First Nat. Bank v. Meeks, supra; Sherrill v. L. & N. R. R. Co., 148 Ala. 1, 44 So. 153; Bolton v. Cuthbert, 132 Ala. 403, 31 So. 358, 90 Am. St. Rep. 914;

Ventress v. Town of Clayton, 165 Ala. 349, 51 So. 763. The instant bill of exceptions recites that this was all the evidence in the case. The employment of such words as "these or those two buildings," "this property," "beyond this," that "gasoline filling station," back "there kinder side of the building," or "adjoining this property," would not reasonably imply such omission of evidence, as pictures or diagrams, as to overcome the positive recital that all evidence adduced on the trial was included in the bill of exceptions. L. & N. R. R. Co. v. Jenkins, 196 Ala. 136, 140, 72 So. 68; Jefferson v. Republic Iron & Steel Co., 208 Ala. 143, 93 So. 890; Fayet v. St. Louis, S. F. R. Co., 203 Ala. 3, 81 So. 671; Ala. G. S. Ry. Co. v. Cornett, 214 Ala. 23, 29, 106 So. 242; Burton & Sons Co. v. May, 212 Ala. 435, 103 So. 46.

[4] The agreement of counsel dispensed with other proof as to right of maintenance of suit against H. H. Walker, as trustee of the bankrupt's estate, of Jefferson County Dairy Company. The admission was that defendant did operate as trustee, and naturally implies that he so operated at the times in question with due authority. The case of Ferrell v. Ross, 200 Ala. 90, 75 So. 466, is not to the contrary. It was there held that the suit was against defendant personally, and the agreement of counsel that defendant "was operating * * * as receiver," in the absence of evidence to the contrary, was no proof to sustain a verdict against defendant as an individual.

The scintilla rule affecting the giving of affirmative instruction need not be repeated. London, etc., Co. v. McCree, 213 Ala. 534, 537, 105 So. 901; McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135.

[5] It was admitted that the plaintiff was the qualified administrator of the decedent; that defendant was at the times in question the duly elected, qualified, and acting trustee in bankruptcy of the estate of the Jefferson Dairy Company, and in such representative capacity was operating the plant at the time and place of the injury; that Seventh avenue was a public thoroughfare of the municipality at the time the decedent was burned. The gasoline station for defendant, used for filling its trucks and those of its employees, set back from that avenue about four or five feet from the inside line of the sidewalk; that defendant's truck was being filled with gas as it faced the street and projected about six feet beyond the filling station; that "nobody was on the truck (according to witness McCartney) except a white boy who was standing on the running board and filling the truck," and decedent was standing about a foot out in front of the truck and about four feet from the curb. There was not "any sidewalk there, that is, no paving," and the paved sidewalk along this avenue west of the filling station "is back about four or five feet

from the curb." The decedent, "who was burned, was standing out in front of it [the truck]," about a foot therefrom. The witness McCartney further testified that at the time of the explosion he was walking on the avenue about six or seven feet from the curbstone and about eight or nine feet from Stephens, when he received his burn; that the filling station was about eight feet back from where the curb line would have been had the curb been set, the street being graded and not paved; that there were present only the two white boys.

The witness Netherly testified that the pathway in front of the Jefferson Dairy Company along that street is on a line with the paved sidewalk further down; that the filling station sets back from the sidewalk about three feet from where the edge of the sidewalk would be up to the concrete; that the site of the pump is five feet from the sidewalk.

It would thus appear that an issue of fact was presented as to the location of Stephens —on defendant's premises or on the sidewalk —when he received the jet of flaming gasoline.

Furthermore, witness Perryman testified there was a negro boy who drove the truck to the station to be filled; that he did not shut off the engine, lighted a cigarette when Stephens was standing on the running board of the truck, and received the charge of burning gasoline; that the negro pulled the hose pipe out of the tank and threw gasoline on Stephens and upon the witness; that the negro was a helper on the truck for the driver, Mr. McCroy. The witness also testified that he acted for the defendant in running the gas station; that the truck was brought to him to fill, which he was doing in the discharge of his duty to defendant, at the time of decedent's injuries. Thus there was an adverse inference in the evidence as to who was in control of the truck at the moment it was being filled.

Whether the truck was in charge of Perryman was material in view of evidence to be later adverted to, that some one moved the machine without the driver's knowledge when he went into the office. Perryman knew the motor should be cut off; that it was dangerous to fill the machine while its motor was running; knew that Stephens was standing near and would probably be injured in the event of ignition of the gasoline. And such was the cause and fact of his injury. It is shown by the evidence the gas went on the ground when overflowed, and the flame flew up with the explosion of gasoline that "went out about ten feet." It was a material issue of fact as to the cause of the explosion, whether by reason of the motor running with a "leaky exhaust pipe" in the machine, or whether it was caused by the lighting of a match for a cigarette. As to these material

facts there were divergent reasonable inferences that may have been drawn by the jury, if they had been permitted to do so by the court.

There was the further fact that Perryman was an employee of defendant, and McCartney was a disinterested passer along the street at the moment of the explosion. If there was no negro present and in charge of the car (as stated by McCartney), and no match was ignited, as stated by Perryman, and there could not have been if the negro was not present, then the explosion was caused by the negligence of defendant's agent in filling the truck with gasoline while the motor was running and in having a defective exhaust emitting a spark. Perryman knew that such method was highly dangerous and knew the close proximity of Stephens to the truck being filled. The evidence of Mitchell, an expert, supports the inference that such condition of facts would cause the explosion. He said: "It is a fact that a running motor in an automobile at times causes sparks." Thus there was a scintilla of evidence in reference to these material questions of fact that should have been submitted to the jury (McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135; Jones v. Bell, 201 Ala. 336, 77 So. 998; London, etc., Co. v. McCree, 213 Ala. 534, 537, 105 So. 901) —the location of Stephens when injured, if on company's property, whether there as an invitee, the cause of the explosion resulting in injury, and the defendant's servant's or agent's responsibility for the negligent condition or act proximately causing Stephens' injuries.

[6] It should be stated of the evidence of Stephens' relation to defendant, or the capacity in which he came to or upon defendant's premises, that it is shown that Stephens, a short time before his death, was working for Duren, at the plant of the dairy company, with the knowledge and consent of said trustee and manager, as a helper to Mr. Duren in the conduct of defendant's business. It was the custom of the various drivers of trucks to employ a boy to help them in loading and delivering milk, and in otherwise discharging the required duties about the plant and along the route in the conduct of defendant's business. This was with the knowledge and consent of Mr. Walker, the trustee and manager of the dairy company. Mr. Duren had not paid Stephens for his work done for defendant, for the sufficient reason that the trustee Mr. Walker had not paid Mr. Duren. Mr. Walker had informed Duren that he would pay him on this particular day (on which Stephens was burned), and Mr. Duren had likewise informed Stephens that he would be so paid, and requested him to come to the plant and get his money on the occasion when he received his injury, and this was what the boy was doing about the plant at the time he was burned, if he was off the street and on

defendant's premises when injured. If Mr. Duren, and the other drivers, had the right of such employment granted them by Mr. Walker to have these boys work on the premises of the Jefferson Dairy Company in carrying on the business of Mr. Walker, as trustee of the Jefferson Dairy Company, it follows, or there was the inference that may be drawn by the jury of the right to invite Stephens to come to the premises and receive his pay for work done for the defendant. The invitation of Mr. Duren for the purpose was the invitation of the defendant. Stephens became an invitee, if he was upon defendant's premises. Ala. By-Products Co. v. Cosby, ante, p. 144, 115 So. 31.

It is undisputed that defendant's agent knew of the deceased boy's presence near the truck, and if deceased was on the premises that defendant's agent knew of the fact. It cannot be reasonably contended that the injury could not have been avoided by the use of ordinary care and prudence on the part of defendant's agent to render and keep the premises in a reasonably safe condition for such invitee. Bennett v. L. & N. R. R. Co., 102 U. S. 577, 580, 26 L. Ed. 235; Ala. By-Products Co. v. Cosby (Ala. Sup.) 115 So. 31;[1] Southern Ry. Co. v. Bates, 194 Ala. 78, 85, 69 So. 131, L. R. A. 1916A, 510.

The cause of the ignition or explosion of the gasoline was a conclusion of fact the jury was trying. The facts only should have been stated by Perryman. However, his final answer amounted to this: That the driver stopped the car, lighted a cigarette, "and about that time it blazed up." In the examination of the witness McCroy, he testified of his employment by the trustee of the dairy company as the driver of the truck; that the negro was helping him put off the milk, and he had so employed him; that Walker gave the driver a certain territory to work and he was expected to get all he could and "turn in the money"; that he drove the truck, worked on a salary and a commission, employing his helper; that the last time witness saw the truck, before the accident, was as he came in and unloaded, went to the office to check up, "came out, and the truck was gone." He was then asked by defendant's attorney:

"Q. Did Mr. Walker or the superintendent give you any orders or instructions about who should drive these trucks?

"Plaintiff's attorney objected to this question on the ground that it called for hearsay testimony and was res inter alios acta. The court overruled the objection and plaintiff's attorney duly and legally excepted. Thereupon the witness answered the question as follows:

"A. We had always been told not to let anybody else drive our truck.

"Thereupon plaintiff's attorney moved the court to exclude the answer on the same grounds assigned to the question. The court

[1] Ante, p. 144.

overruled the motion and to that ruling of the court the plaintiff duly and legally excepted."

[7] This evidence was res inter alios acta as to plaintiff's cause of action. It was the dairy company's business to discharge its truck, making it ready for another trip by having it filled with gasoline by defendant's agent. It was not the driving of the truck from the two adjacent points at its plant, but the negligent manner of the discharge of duty by defendant's agent at the filling station in putting in the gasoline, that caused the injury.

[8] The court erred in sustaining defendant's objection to the following question asked the witness Phillips by plaintiff's attorney on cross-examination: "Did you ever tell him not to come there to get his pay?"—meaning decedent Stephens. The evidence had shown that this boy had been working around the plant for some time, helping to carry on the business of the defendant with the knowledge and consent of the defendant, and was seen there, so employed, by the superintendent; that he was not paid by the defendant, but by one of the defendant's route men, and that the defendant knew this; that most of the route men had boys for helpers, and of this the defendant had knowledge. The evidence without question showed that the defendant was tardy in paying the Stephens boy's employer, Mr. Duren, and for such reason such employer of the boy had not paid him, but asked that Stephens come to the plant of the Jefferson Dairy Company at this particular time to get his pay for services rendered in the conduct of that business. It was permissible to ask witness Phillips, who was, or exercised authority as superintendent of production about the plant, whether or not he had ever told the boy not to come there to get pay for his services. The cross-examination was responsive to answer on the direct examination. The court erred in refusing to allow the question; the defendant had shown that said witness had given Stephens instruction about "hanging around the plant," and to "stay out of the office." So, also, the court committed error in sustaining defendant's objection to the following cross-examination directed to the witness Phillips by plaintiff's attorney: "And yet, you didn't raise any objections to him working around there?" It had been admitted by the witness that Stephens had recently worked around the plant for some time; the defendant knew that he was not on the pay roll of the defendant, but employed by its driver; and the purpose of the question was to show that the defendant knew the boy was working there as the contractor's helper and by implied invitation of the defendant, and therefore had an implied invitation to come back at the request of Mr. Duren to be paid off for the service rendered in helping to carry on defendant's busi-

ness. In Sloss-Sheffield Steel & Iron Co. v. Hubbard, 14 Ala. App. 139, 143, 68 So. 571, 572, it is said:

" 'Work being done through the firm's own procurement, for their own use and benefit, and upon their own premises, over which they retained a superintendence for the miners' protection, they owed a duty toward the contractor's servants to keep the premises in a reasonably safe condition.' Kelly v. Howell, 41 Ohio St. 441."

[9, 10] It is the rule of this court that, if there is error affecting a party not entitled to succeed in the suit, such error will not work a reversal, as where the general affirmative charge was due such party. Chandler v. Pope, 205 Ala. 49, 87 So. 539; Ala. Red Cedar Co. v. Tennessee Valley Bank, 200 Ala. 622, 76 So. 980; Adams v. Corona Coal & Iron Co., 183 Ala. 127, 62 So. 536; Sands v. L. & N. R. R. Co., 156 Ala. 323, 47 So. 323; Bienville Water Sup. Co. v. City of Mobile, 125 Ala. 178, 27 So. 781. We come to a decision of the question raised, whether a claim ex delicto arising out of the trustee's operation of the trust estate, and "not resulting in the enrichment" of the bankrupt's estate, is enforceable to judgment against the trustee and provable against the estate of the bankrupt, subject to the jurisdiction and powers of the bankrupt's court in the due administration of the estate?

In Atlanta, B. & A. Ry. Co. v. McGill, 194 Ala. 186, 188, 189, 69 So. 874, a substituted receiver, appointed by the federal court to operate a railroad during liquidation in said court, was so operating at the time injury resulted and damages sought accrued; the suit was permitted in the state court. The well-known quotations from High on Receivers (4th Ed.) pp. 549, 551, 557, 558, were there approved and to the effect that the liability for negligence or tort of his (receiver's) servants and employees in operating the road is not a personal one, and that "he is only liable in his official capacity as receiver or agent of the court; the proceeding being analogous to a proceeding in rem, and binding the property or estate, rather than the person of the receiver." See, also, report of the same case in 184 Ala. 562, 63 So. 1009, and Steele v. Booker, 205 Ala. 210, 87 So. 203; Hershy Chocolate Co. v. Sharpe, 199 Ala. 21, 74 So. 33; Code, § 10117, taken from U. S. Comp. Stat. § 1048, and note 3; section 66, U. S. Jud. Code; 28 USCA § 125, and note 2, p. 212; In re Smith (D. C.) 121 F. 1014; In re Soloman, (D. C.) 294 F. 295. That is, the federal courts have recognized the right of action, in state courts, for torts, trespass, and trover committed by trustees and receivers in the management and operation of properties of trust estates and in the temporary conduct of the business thereof. In re Kanter et al. (C. C. A.) 121 F. 984; In re Russell (C. C. A.) 101 F. 248; In re Spitzer (C. C. A.) 130 F. 879;

Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867.

The pertinent provisions of the act of Congress are:

"Sec. 124. (Judicial Code, § 65). *Management of Property by Receivers.*—Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." 28 USCA § 124, p. 173; 28 USCA § 125, pp. 212, 213, 215.

And suit is authorized in section 125, p. 212.

The last-cited provision is given a place in the Code of 1923 as section 10117. It is well stated in the note to the foregoing text:

"This section and section 124 of this title, requiring receivers appointed by a United States court to operate the property according to the requirements of the valid laws of the state in which it is situated, and subjecting them to suit in respect of any act in carrying on the business connected with the property, are to be interpreted broadly, so that the business shall be carried on by such receivers with as much regard for the safety and protection of the rights of others as would be required of the owners of the property. Sullivan v. Hustis (1921) 130 N. E. 247, 237 Mass. 441, 15 A. L. R. 1360." 28 USCA § 125, note.

" 'It is held that this statute (this section) applies to receivers appointed in bankruptcy proceedings as well as other federal receivers. In re Kanter (N. Y. 1903) 121 F. 984, 58 C. C. A. 260; In re Smith (D. C. N. Y. 1903) 121 F. 1014; In re T. L. Kelly Dry-Goods Co. (D. C. Wis. 1900) 102 F. 747.' In re Kalb, etc., Mfg. Co. (C. C. A. N. Y. 1908) 165 F. 895." 28 USCA § 125, note 2.

"The section applies to receivers in bankruptcy, but does not authorize a suit without leave against such a receiver unless he is carrying on the business of the bankrupt, or in respect to his acts relating merely to the care and preservation of the property of the estate. In re Kalb & Berger Mfg. Co. (N. Y. 1908) 165 F. 895, 91 C. C. A. 573; In re Roberts (N. Y. 1909) 169 F. 1022, 94 C. C. A. 668. See, also, In re Smith (D. C. N. Y. 1903) 121 F. 1014." 28 USCA § 125, note 2.

"This section gives to a state court jurisdiction of any cause instituted against a receiver appointed by a federal court where the subject-matter of the suit is an act or transaction of the receiver in carrying on the receivership business, and where such court has secured jurisdiction of the parties. Colonial Trust Co. v. Pacific Packing & Navigation Co. (C. C. N. J. 1906) 142 F. 298, 299, reversed on other grounds (1907) 158 F. 277, 85 C. C. A. 539." 28 USCA § 125, note 6.

"Persons injured by the operation of a street railway by a receiver appointed in mortgage foreclosure proceedings in a federal court were not bound to apply for an allowance of damages in such proceedings, but could reduce their claim to judgment in a state or other court

having jurisdiction. Nashville Ry. & Light Co. v. Bunn (Tenn. 1909) 168 F. 862, 94 C. C. A. 274." 28 USCA § 125, note 6.

See, also, Bush v. South. Groc. Co., 137 Ark. 262, 208 S. W. 299; Nashville Ry. & L. Co. v. Bunn, 168 F. 862, 94 C. C. A. 274; U. S. v. Douglas, 113 N. C. 190, 18 S. E. 202; Denver etc., Co. v. Gunning, 33 Colo. 280, 80 P. 727; People v. Joline, 65 Misc. Rep. 394, 121 N. Y. S. 857; Hawkins v. St. Louis R. Co. (Mo. App.) 202 S. W. 1060.

The cases of Schall v. Camors, 251 U. S. 239, 40 S. Ct. 135, 64 L. Ed. 247, and Lewis v. Roberts, 267 U. S. 467, 45 S. Ct. 357, 69 L. Ed. 739, 37 A. L. R. 1440, relied upon by appellee, are not apt for the sufficient reason that the torts on which these suits were sought to be rested were committed by the bankrupt, and not by the trustee in bankruptcy, during the court's operation of business. The suits for torts in the Schall and Lewis Cases, supra, were not within the provision of the federal statute (11 USCA §§ 35, 103(a) (a1). It is noted from the cases that the federal decisions give broad application or significance to the words of the statute, "receivers or managers," as employed in the amendatory act of Congress (28 USCA §§ 124, 125).

The permanent officer of the bankrupt court for handling the estate and conducting its temporary business incident to its due administration and pursuant to direction of the court is the "trustee," under the former act of 1867 (14 Stat. 517) designated as "assignee;" and the terms employed by the statute (section 66, U. S. Jud. Code; 28 USCA p. 212, § 125)—"receiver or manager of any property appointed by any court of the United States may be sued in respect of any act or transaction of his in carrying on the business connected with such property," etc.—must be held to embrace a trustee in bankruptcy. A judgment obtained against such official or representative of bankrupt estate becomes an ascertained charge upon the property thereof in gremio legis, subject to the orders and decrees of the court in which the receivership is attached, or administration of the bankrupt estate is proceeding in its due administration. Such is the rule to avoid conflicts of jurisdictions, federal and state, and necessary to an orderly administration of the bankrupt's estate and the disbursement of the proceeds thereof to those entitled under the law. Hershy Chocolate Co. v. Sharpe, 199 Ala. 21, 74 So. 33; 34 Cyc. 447, B; Byers v. McAnley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867.

In the recent case of Lewis v. Roberts, 267 U. S. 467, 45 S. Ct. 357, 69 L. Ed. 739, 37 A. L. R. 1440, it was declared by sections 17, 63a, 63a(1), of the Bankruptcy Act (30 Stat. 544, Comp. Stat. § 9647, 1 Fed. Stat. Anno. [2d Ed.] p. 1054, 11 USCA §§ 35 103(a), (a 1),

that a judgment for tort is provable under express provisions of § 63a(1), and that there was nothing to the contrary in Wetmore v. Markoe, 196 U. S. 68, 25 S. Ct. 172, 49 L. Ed. 39, or in Schall v. Camors, 251 U. S. 239, 40 S. Ct. 135, 64 L. Ed. 247.

The judgment of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and BROWN, JJ., concur.

