## In re BAYLEY.

(District Court, W. D. Pennsylvania, July 31, 1909.)

1. LANDLORD AND TENANT (§ 80*)—ASSIGNMENT OR SUBLEASE—CONSTRUCTION.

Where the lessee of a hotel executed what purported to be a sublease for the entire remaining term for the same rent, providing that receipts for installments made to the original landlord should be received in discharge of the sublessee's obligation under the lease, the original lessee retained no reversion, and the sublease would be regarded as an assignment of the term, and not as a sublease, though it expressly provided that it was intended to establish the relation of landlord and tenant between the parties thereto with all the rights and liabilities attached to that relation.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 254–257; Dec. Dig. § 80.*]

2. BANKRUPTCY (§ 350*)—CLAIMS AGAINST ESTATE—LANDLORD'S LIEN—PRIORITY.

The lien of a landlord on personal property, which is liable to distress, will be preserved in bankruptcy proceedings as against the proceeds of such property in priority to the general expense of the administration of the estate, subject only to the direct expense incurred in realizing the fund liable to the lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 537; Dec. Dig. § 350.*]

3. LANDLORD AND TENANT (§ 267*)—SUBLEASE OR ASSIGNMENT—EFFECT—DISTRESS.

In case of a sublease, the lessor by operation of law has the right of distress by reason of the reversion remaining in him after the termination of the sublease; whereas, in case of an assignment, the lessor or assignor, having parted with all his estate, does not possess the right of distress unless expressly reserved in the deed of assignment.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 1081; Dec. Dig. § 267.*]

4. LANDLORD AND TENANT (§ 267*)—ASSIGNMENT OF LEASE—DISTRESS BY ASSIGNOR.

Where the assignment of a lease provided that, in case of the assignee's failure to pay rent, the assignor may declare a forfeiture and re-enter, and also contained a waiver of the exemption law on any warrant of distress that might be issued, it did not include an implied right of distress in the assignor.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 1080, 1081; Dec. Dig. § 267.*]

5. BANKRUPTCY (§ 249*)—ADMINISTRATION OF ESTATE—CONTINUANCE OF BANKRUPT'S BUSINESS—MISTAKE OF JUDGMENT—TRUSTEE'S LIABILITY.

Where, on the bankruptcy of the assignee of a hotel lease, the assignor, on the appointment of a receiver, petitioned the court to authorize the receiver to continue in the operation of the hotel because it would be to the interest of the estate that it should be sold as a going concern, and, though the assignor objected to the continued operation of the hotel, he took no immediate steps to prevent such continuance, nor until considerable loss had been sustained by the trustee, the latter was chargeable only as for a mistake of judgment, and was therefore not bound personally to make good any loss.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 347; Dec. Dig. § 249.*]

In the matter of bankruptcy proceedings against Howard Bayley. On exceptions to trustee's account. Dismissed, and report confirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The following is the opinion of Blair, Referee.

On September 26, 1908, the trustee in the above-entitled case filed its second and final account, showing a balance due the trustee of $267.83. To said account exceptions were filed on behalf of William Witherow, alleging that the accountant should be surcharged with: First, the sum of $4,325, the amount received by the trustee from the sale of the personal property in the hotel belonging to the bankrupt; and, second, that it should be further surcharged with the sum of $28,309.84 as rent due exceptant during its administration of the estate. After said exceptions were filed, a hearing or hearings were held before the referee at his office in the city of Pittsburgh, and certain testimony and evidence was taken, a true and correct transcript of which is filed of record in the case.

The questions raised by the exceptions are, briefly: First, whether the claim of the landlord for rent due at the time of the filing of the petition, and undisputedly amounting to the sum of $14,000, should not be paid out of the proceeds of the sale of the personal property on the premises of the bankrupt in priority to the expense of carrying on the hotel during the bankruptcy proceedings; and, second, whether the trustee should not also be ordered to pay the rent of the premises for the year during which the trustee occupied the hotel in the administration of the estate.

The facts in the case the referee finds from the testimony and evidence to be as follows:

That in August, 1907, the accountant, the South Side Trust Company, of the City of Pittsburgh, was duly appointed receiver of the estate of Howard Bayley, the bankrupt in this case. At the time of the filing of the petition, the bankrupt was in possession of a hotel in the city of Pittsburgh, known as the "Hotel Duquesne," under articles of agreement with William Witherow, the exceptant in this case. Witherow was the lessee from Andrew W. Mellon of the hotel under a lease for the term of 10 years from April 1, 1904, to wit, until April 1, 1914, the terms of which, so far as material to the present controversy, will be more fully set forth later in this report.

The articles of agreement between Witherow and Howard Bayley, the bankrupt, are dated the 22d day of June, 1906, and recite "an agreement of the parties whereby Witherow agreed to sell to Bayley the hotel business, known as the Hotel Duquesne, and to 'sublet' to Bayley the premises known as the Hotel Duquesne from A. W. Mellon for the remainder of the term of said lease, subject to all the provisions thereof, and upon the same terms and conditions and for the same rental as herein provided"; a copy of said Mellon lease being attached to the agreement. The agreement then proceeds that: "For the purpose of carrying into effect the above-recited contract between the parties hereto (that is, Witherow and Bayley), except in so far as the terms of the Mellon lease may herein be expressly modified or supplemented, and for the purpose of establishing between the parties hereto the relation of landlord and tenant, with all the rights and liabilities attached to that relation at law, in equity and by statute, the first party (Witherow) hereby sublets to the second party (Bayley) from the 25th day of June, 1906, for and during the term of seven (7) years, nine (9) months and seven (7) days, that is, until April 1, 1914, reserving as rent the several sums hereinafter covenanted to be paid by the second party," the property known as the "Hotel Duquesne."

The agreement further provides for the assumption by Bayley, the tenant, of Witherow's lease to certain tenants of part of the property, and also for the substitution of Bayley to all the terms and conditions of the lease from Mellon to Witherow. The covenant to pay rent is as follows: "In consideration whereof the second party (Bayley) for himself, etc., covenants and agreed that he will pay to the first party (Witherow) as rent the sum of $232,500.00 in the manner following: $2,500.00 on the first day of July, 1906, and the sum of $2,500.00 on the first day of each and every month following the date last aforesaid until the whole amount of said rent is paid, making actual payment, however, of the several sums to A. W. Mellon, whose receipts delivered to the first party within five (5) days after due and prompt payment of each installment of rent shall be complete discharge of the second party from his liability from said agreement."

The said articles of agreement also provide as follows: "And said second party (Bayley) for himself, etc., hereby waives the benefit of all laws and acts of assembly exempting property of any amount or value from levy and sale on execution or distress for rent upon any landlord's warrant that may be issued, or upon any execution of any judgment that may be recovered for rent to become due under this lease." The agreement further provides that, in case the rent should be in arrear, Méllon might, at his option, declare a forfeiture, and after 15 days' notice re-enter and repossess himself of the premises. . The articles of agreement contain no express reservation of the right of distress in Mr. Witherow.

It is not disputed that at the time of the filing of the petition there was due from Bayley as rent of the premises the sum of $14,000. And it is also undisputed that the personal property on the premises, consisting of the furnishment of the hotel, was sold by the trustee for the sum of $4,325, which the trustee has applied to the expenses of managing the hotel while the trustee continued its operation.

Upon the foregoing facts the learned counsel for the exceptant bases his first exception, and claims that the exceptant, William Witherow, is entitled to have devoted to the payment of the rent due at the time of the filing of the petition, to wit, the sum of $14,000, the proceeds of the sale of the personal property, namely, the sum of $4,325, in lieu of devoting said last-mentioned sum to the expense of maintaining the hotel. The learned counsel based the exceptant's claim upon the assertion that the personal property sold, as above stated is liable to a lien in favor of Mr. Witherow, as landlord, which lien was entitled to be paid in preference to the expense of keeping the hotel in operation.

In support of their proposition they cite Barnes' Appeal, 76 Pa. 50; In re Morris (D. C.) 19 Am. Bankr. R. 781, 159 Fed. 591; In re Mitchell (D. C.) 8 Am. Bankr. R. 324, 116 Fed. 87, and other cases, in which it has been held that the lien of a landlord upon personal property on the leased premises "liable to distress" is entitled to priority in payment under the law of Pennsylvania. It is undoubtedly true that the lien of the landlord upon personal property which is "liable to distress" will be preserved as against the proceeds of such personal property in priority to the general expense of the administration of the estate, and subject only to the direct expense incurred in realizing the fund liable to said lien. But the question in this case is whether, under the agreement between Mr. Witherow and Mr. Bayley, the bankrupt, the personal property, the ·proceeds of which are now here for distribution, is liable to distress by Mr. Witherow.

Mr. Witherow was the lessee from Mr. Mellon of the premises under the lease running until April 1, 1914, and by the articles of agreement already referred to and quoted his entire interest in said hotel is transferred to Mr. Bayley, who is now the bankrupt, and the question is now whether the articles of agreement between Mr. Witherow and Mr. Bayley were a lease or sublease by Mr. Witherow to Mr. Bayley, or an assignment of the term.

The referee, after the most careful consideration of the agreement and all its terms, has reached the conclusion that the paper must be regarded as an assignment of Witherow's lease with Mellon, and not as a lease or sublease from Witherow to Bayley. It is true, as already appears from the quotations from the articles of agreement already made, that the parties called it a sublease, and especially recite that it is executed for the purpose of establishing the relation of landlord and tenant, with all the rights and liabilities resulting from that relation in law, equity, or by statute; but it is a cardinal rule in the construction of papers that it is the paper itself which determines its character, and not what the parties may have chosen to designate as its character. In other words, if the agreement is in legal effect an assignment of the lease, it must be so regarded, although the parties themselves may call it something else, and may even recite that it is their intention to create something else. Where the lessee of land transfers all of his interest therein, it is an assignment, and not a sublease thereof. A lease or a sublease must, in legal contemplation, leave in the lessor or sublessor some estate in reversion. This is implied in every lease or sublease, and if the lessee transfers all his estate without reserving any reversion to himself the transfer is an assignment, and not a lease or sublease. Now, the difference between the lease or sublease and an

assignment, so far as the right of distress is concerned, is this: That in the case of a lease or sublease the lessor has by operation of law the right of distress by reason of the reversion remaining in him after the determination of the lease; whereas, in the case of an assignment the lessor or assignor, having parted with all his estate in the land, does not possess the right of distress, unless the right of distress is reserved to him in the deed of assignment.

Guided by these rules, the referee is of the opinion that the agreement between Witherow and Bayley was an assignment, and the only question remaining, therefore, is whether the right of distress is, by said agreement, reserved to Mr. Witherow. The article of agreement contains no express reservation of the right of distress. It provides that in case of the failure to pay rent Mr. Witherow may declare a forfeiture and re-enter. It then provides for the waiver of the exemption law upon any warrant of distress that may be issued, etc., and it is argued that this implies the reservation of the right to issue such landlord's warrant; but the referee does not so construe this agreement. While it is true the agreement contains an understanding on the part of Bayley to pay a rent equal to the rent due Mr. Mellon under his lease with Witherow, yet the lease itself provides for the payment of this rent primarily to Mr. Mellon, and the waiver of the exemption clause, in the judgment of the referee, is to be construed as applicable to any warrant of distress, including, of course, any which may be issued by Mr. Mellon, the landlord, rather than as creating a right of distress in Mr. Witherow, which could have been clearly and unambiguously created, as is done every day, if it had been the clear intention to create a right of distress in Mr. Witherow.

For the reason, first, that the article of agreement between Witherow and Bayley transferred the entire interest of Witherow in the land for the entire term or terms identical with the terms of Mr. Witherow's lease from Mr. Mellon, and are therefore in law an assignment of Witherow's lease, no matter what the article of agreement chose to call itself, and, second, that in such assignment there is no reservation of the right of distress in Mr. Witherow, the referee is of the opinion that the personal property in the Hotel Duquesne was not at the time of the filing of the petition liable to the distress warrant by Mr. Witherow, and that Mr. Witherow's claim, based on such assumed liability, cannot be sustained.

The second exception, or class of exceptions, filed on behalf of Mr. Witherow, claims or claim that the trustees should be surcharged with the rent accruing during the maintenance of the hotel by the receiver and trustee, upon the ground that the account as filed prefers the creditors for supplies and wages during the operation of the hotel to the exclusion of the landlord, who is thus made not to share the losses incurred in the operation of the hotel, but to sustain them.

In addition to the facts already found in this report, it appears that, almost immediately upon the appointment of the receiver, the bankruptcy court, on the petition of Mr. Witherow, authorized the receiver to continue the operation of the hotel upon averments contained in Mr. Witherow's petition that it would be for the interest of the estate that the hotel should be kept open and the same sold as a going concern, rather than that it should be shut up.

In pursuance of said order of court, the receiver and trustee afterwards continued to operate the hotel at a loss, as shown by the account.

It appears that, shortly after the receiver commenced the operation of the hotel, Mr. Witherow called upon Mr. Page in regard to the disposition of the property. There is some difference in the testimony introduced on behalf of Mr. Witherow and the trustee as to exactly what took place at these two interviews; but it appears to be clear that they did not altogether agree as to the advisability of operating the hotel, Mr. Witherow being of the opinion that it could not be successfully operated, while, on the contrary, Mr. Page, the executive officer of the receiver and trustee, being of the opinion that it could. Mr. Witherow states that at these interviews he protested against the continued operation of the hotel. Mr. Page says that, while it is true Mr. Witherow differed with him as to the wisdom of continuing the operation, Mr. Witherow's objection was not so much a protest against the continued operation of the hotel, but was in the line of urging its speedy sale. Mr. Page further states that the receiver and trustee were heartily in favor of the sale and

disposition of the property at the earliest possible moment, and that it made every effort to accomplish such a sale; that several sales were advertised, and on two or three occasions the property actually submitted to bidders; but that no reasonable bid was ever received for the property prior to the sale which resulted in the funds now for distribution.

It further appears that in ———— Mr. Witherow retained John C. Slack, Esq., as his counsel in place of Messrs. Scandrett & Barnett, who up to that time had acted for both Mr. Witherow and for the trustee, and thereupon Mr. Slack filed a petition asking leave for Mr. Witherow to proceed on his landlord's warrant to a sale of the personal property. This petition was refused, and thereupon active negotiations ensued, which resulted in the sale of the property to Mr. Witherow.

In these circumstances the learned counsel for Mr. Witherow urged that, the operation of the hotel having been carried on against his will, he should not now be compelled to lose his rent, and that, the trustee having exercised its judgment in favor of operating the hotel, it should suffer the consequences in being obliged to pay the rent to Mr. Witherow.

The referee has examined the testimony and all the evidence presented in the case with the utmost care, and after full consideration has reached the conclusion that this contention on behalf of Mr. Witherow cannot be sustained. While it is undoubtedly true that the trustee's hopes and expectations as to the results of the operation of the hotel have been disappointed in the event, a mere mistake of judgment, without more, is, of course, insufficient to involve the trustee in personal liability. While it is clear from the testimony of Mr. Witherow that he did not approve the policy of continuing the operation of the hotel, and probably so expressed himself to the trustee, the referee is of the opinion that, when he found the trustee differed with him upon this subject, it was his duty to take steps to protect his rights, or at least to unequivocally notify the trustee of the consequences which he proposed to fasten upon the trustee.

The referee is of the opinion that it was the duty of Mr. Witherow, in case he was unwilling that the operation of the hotel should be continued, for the benefit of himself and creditors, to have taken steps to have prevented such continuance, as was done in 1908, when his petition above mentioned was filed, resulting eventually in the sale of the property.

In this case, while the hopes and expectations of the trustee have been disappointed, as already stated, the matter in all the circumstances of the case was a matter of judgment merely—a mistake which should not and does not render the trustee liable to make good the loss resulting from such mistaken judgment.

On the whole case, the referee is of the opinion that the exceptions filed on behalf of Mr. Witherow should be dismissed, and the account of the trustee confirmed.

Thomas Patterson, John C. Slack, O. S. Richardson, and W. D. N. Rodgers, for exceptant.

W. S. Thomas and J. M. Shields, for accountant.

PER CURIAM. Exceptions to referee's report dismissed, and report confirmed.