Hillsborough, }
Feb. 2, 1926. }

### ABRAHAM MACHINIST *v.* SARKIS KOORKANIAN & a.

### SARKIS KOORKANIAN & a. *v.* ABRAHAM MACHINIST.

The signature of the lessee is not essential to the validity of a lease accepted by him.

There cannot be a lease without the reservation of some reversion to the lessor. An assignment of a lease is therefore not a lease, and is not in violation of a clause in the lease forbidding leasing by the lessee without the consent of the lessor.

In the absence of some provision to the contrary, a lease is assignable although not made to the lessee's assigns.

The assignee of a lease succeeds to all the rights of the assignor, and is substituted in place of the lessee as the party from whom the lessor is to receive the rent, although the lessee may also remain liable for the rent in the absence of novation, substitution or release.

ACTION, under the landlord and tenant act, to recover the possession of certain premises in Manchester, and BILL IN EQUITY, to reform a lease of the premises and to enjoin the prosecution of the landlord

and tenant action, which was begun in the municipal court and transferred to the superior court on a plea of title. Both cases were tried together by a referee and master. The facts material to the questions raised are as follows:

Bailey, Drury and Wason, owners of the premises in question, leased them to one Gregoris for a term of ten years from May 1, 1919. Objection having been made by one of the owners to the first draft of the lease, in which a printed covenant against leasing and underletting had been crossed out, another draft was submitted which retained the stipulation that the lessee should not "lease" the premises "but with the approbation, in writing, of the lessor." This draft was signed by all three owners, but through an oversight was not signed by Gregoris. It was duly sealed, witnessed, and acknowledged, and was recorded by the attorney who drew it and who was acting apparently for all parties.

June 23, 1921, Gregoris executed an assignment and transfer of his right, title and interest in the lease to Sarkis and Hoogas Koorkanian, hereinafter called the defendants. This was done on the assumption that the owners would consent to the assignment. They refused to consent, however, and on August 4, 1921, conveyed the premises to Machinist (hereinafter called the plaintiff), who had actual knowledge of the outstanding lease.

Immediately after acquiring his deed, the plaintiff notified the defendants that the rent would be increased, and upon their refusal to pay the rent demanded, gave them legal notice to quit. The defendants paid rent for the month of July to one of the original owners, who acted as agent for the collection of rents, but had no authority to bind the other owners. Rent for August was paid to the plaintiff. It was conceded in oral argument that rent subsequently accruing had been paid by the defendants and accepted by the plaintiff under an agreement that such payment and acceptance should be without prejudice to the rights of either party. After the sale to the plaintiff no rent was paid by Gregoris, who severed all connection with the property and left the city.

On these facts the master ruled (1) that the lease was binding upon the lessors although not signed by the lessee, (2) that the lease was not assignable, (3) that the owners did not consent to the attempted assignment, and (4) that whatever rights, if any, the defendants acquired by the transfer from Gregoris to them were terminated by the failure of Gregoris to pay rent or to tender the rent due to the owners. The master further ruled as a matter of law that the lease

to Gregoris was terminated both as to the former owners and also as to the plaintiff. This ruling of law was reversed by the presiding justice, who thereupon entered judgment for the defendants in the landlord and tenant action, and dismissed the bill in equity. The plaintiff excepted. Transferred by *Branch*, C. J.

*Osgood & Osgood* (*Mr. Clinton S. Osgood* orally), for the plaintiff.

*James A. Broderick* and *Andrews & Andrews* (*Mr. Broderick* orally), for the defendants.

*Edward H. Wason, pro se.*

MARBLE, J. The master correctly ruled that the signature of the lessee was not essential to the validity of the lease. It has been repeatedly held in this jurisdiction that a deed poll, when accepted by the grantee, becomes the mutual act of the parties. *Burbank* v. *Pillsbury*, 48 N. H. 475; *Harriman* v. *Park*, 55 N. H. 471; *Winnipesaukee &c. Association* v. *Gordon*, 63 N. H. 505, 67 N. H. 98; *Attorney-General* v. *Nashua*, 67 N. H. 478, 480. The principle has been applied to the assignment of a patent right accepted, though not signed, by the assignee (*Dow* v. *Harkin*, 67 N. H. 383), and to a memorandum of conditional sale signed by the vendee and accepted, but not signed, by the vendor (*Churchill* v. *Demerritt*, 71 N. H. 110, 112).

On precisely the same principle, a lease signed by the lessor alone operates as a deed poll, and acceptance thereof by the lessee renders it valid and binding on both parties according to its terms. 1 Underhill, L. & T., s. 232.

Relief under the landlord and tenant act is confined to those cases "where there has been a tenancy." *Leavitt* v. *Wallace*, 12 N. H. 489; *Hovey* v. *Blanchard*, 13 N. H. 145; *Morrison* v. *Tenney*, 15 N. H. 126; *Stockbridge* v. *Nute*, 20 N. H. 271. Whether the plaintiff, who denies that the defendants are, or ever have been, his tenants can maintain the action need not be determined, for no objection has been made (*Concord* v. *Burleigh*, 67 N. H. 106, 108), and any objection which might be made could be obviated by amendment. *Hub Construction Co.* v. *Breeders Club*, 74 N. H. 282, 287; *Peaslee* v. *Dudley*, 63 N. H. 220.

Assuming, then, that the action can be maintained and that Gregoris was bound by the stipulation not to lease the premises without the lessors' approbation in writing, it becomes necessary to

inquire the meaning of the word "lease" as understood and used by the original parties.

While, in order to constitute a lease, it is not absolutely essential that rent should be reserved, it is necessary that there be some reversion of the estate. One of the indispensable requirements of a lease, as defined by Blackstone, is that its duration must always be for a less term than the party conveying has in the premises. 2 Bl. Com. 317. A grant by the lessee of his entire interest constitutes an assignment. *Dartmouth College* v. *Clough*, 8 N. H. 22, 29; *Boston, C. & M. Railroad* v. *Railroads*, 65 N. H. 393, 452; 16 R. C. L. 825.

Here, according to the facts found, the lessee executed an assignment and transfer of his right, title and interest in the lease. He made no attempt to reserve a rent to himself, nor to create in any way a relation of landlord and tenant between himself and the defendants. On the contrary, he severed all connection with the property, as lessee or in any other capacity, and left the city a short time thereafter. Clearly, on this state of facts, the transaction cannot be termed a "lease" unless the universally accepted meaning of the word is to be totally disregarded.

The person who drew the lease and the owner to whom it was submitted were lawyers. They are presumed to have used the word in its proper sense. If the lease is read as a connected whole and without reference to the omitted words, the stipulation is free from any possible ambiguity. It forbids the lessee to create a new tenancy between himself and another, but does not forbid him to transfer his entire interest. If read in connection with the omitted words, its meaning is quite as evident. The word "underlet" was doubtless rejected as superfluous, while the phrase "nor permit any other person or persons to occupy" was struck out as inconsistent with the lessee's right to make an assignment, — a right which would not be affected by the covenant against subletting (*Goldman* v. *Feder*, 84 W. Va. 600), and which the lessors intended to preserve.

That they did so intend is apparent from the fact that all their covenants are with the lessee and his assigns. "There is no doubt that a lease is assignable, whether the term 'assigns' be inserted or not" (*Spear* v. *Fuller*, 8 N. H. 174, 176), and the forms prescribed in the various editions of the "Justice and Sheriff" do not contain the word. While the selection of a printed form with the word inserted might not be significant apart from other circumstances, it is convincing proof of the lessors' intention, when the stipulation

relating to occupancy, which would be an effectual bar to an assignment if retained, is struck out, and words which make the lease assignable beyond peradventure are left in. *Upton* v. *Hosmer,* 70 N. H. 493, 495; *Hoyt* v. *Kimball,* 49 N. H. 322, 327.

It is therefore held that the covenant in question was not a prohibition against assignment, and that the transfer from Gregoris to the defendants was permitted by the specific terms of the lease.

The fact that Gregoris failed to pay or tender rent after the assignment did not terminate the lease. It is true that he remained liable for the rent in the absence of novation, substitution or release (*La Société* v. *Owen,* 79 N. H. 318), but the defendants were also liable (*McMurphy* v. *Minot,* 4 N. H. 251; *Chase* v. *Weston,* 12 N. H. 413, 417; *Trustees* v. *Streeter,* 64 N. H. 106). The assignment was valid. By accepting it, the defendants not only assumed the burden of Gregoris's obligations, but also acquired his rights. They were entitled to exercise those rights in their own behalf. The rule that a subtenant cannot compel the original lessor to accept rent is not applicable to cases of assignment. *Bachus* v. *West,* 104 Or. 129, 141.

In view of the result reached there is no occasion to decide whether or not acceptance of the rent for July and August constituted a waiver.

*Exceptions overruled.*

BRANCH, J., did not sit: the others concurred.