ANNA DUMONTIER, Plaintiff, *v.* THEODORUS BAILEY, Defendant.

Municipal Court of New York, Borough of Manhattan, Ninth District, June, 1932.

*Francis Dean* [*George H. Fox* of counsel], for the plaintiff.

*Bangser & Kaufman* [*Adolph Bangser* of counsel], for the defendant.

GENUNG, J. The action is for money had and received. The answer is a general denial, and a counterclaim for $1,000.

Though the pleadings are simple, the facts are somewhat involved. For the purpose of this opinion, however, the facts need not be stated in all their complex details.

By mesne assignments, plaintiff on or about August 10, 1927, came into possession of certain premises which defendant, by a lease in writing, had demised to one Anna Bogner for a term of nine years, commencing November 20, 1926. The premises consisted of a five-story building of forty-two rooms, which were leased to the tenant " to be used in the business of subletting the apartments thereof, furnished or unfurnished, for residential and living purposes." There was deposited under the lease the sum of $900 " as security for the full and faithful performance by the tenant of all of the terms and conditions upon the tenant's part to be performed, which said sum shall be returned to the tenant after the time fixed as the expiration of the term herein, provided the tenant has fully and faithfully carried out all of the terms, covenants and conditions on her part to be performed." (The

right to the return of this security was likewise assigned to the plaintiff.)

Under the terms of the lease the tenant was required " at her own cost and expense [to] make all repairs both interior and exterior, structural changes and replacements to the building and its equipment * * *," and was also required to " promptly execute and comply with all statutes, ordinances, rules, orders, regulations and requirements of the Federal, State and City government, and/or any and all of their departments and bureaus applicable to said premises, for the correction, prevention and abatement of nuisances or other grievances, in, upon or connected with said premises during said term."

Plaintiff went into possession of the premises on or about August 10, 1927, and there conducted a rooming house.

It appears that on or about July 16, 1926, a violation order on the premises in question was issued by the tenement house department, the violation charging a serious infringment of fire regulations. This violation order was outstanding as against the premises at the time when the lease with plaintiff's remote assignor was entered into. A rider appears to have been attached to said lease, initialed both by the original tenant and the defendant, whereby it was provided that " The tenant further agrees to at once remove the Tenement House Department violation, Item No. 45, dated July 16, 1926, a copy of which has been exhibited to the tenant, and which the tenant acknowledges having seen." The plaintiff disputes the contention of the defendant that a copy of this rider was attached to the tenant's copy of the lease. I am persuaded, however, that the rider was so attached.

In October, 1927, subsequent to plaintiff's entry into possession of the premises, a proceeding was commenced at the Magistrates' Court, based upon said violation. Both plaintiff and defendant appeared upon the hearing. Plaintiff and defendant met in court on the occasion of the hearing, discussed the matter, and it appears to have been agreed that plaintiff, with the consent of the defendant, would, at her own expense, cause alterations and changes to be made to the premises which would obviate the condition charged in the violation order. As part of the mechanics of complying with the violation order, a conversion application was filed on or about October 15, 1927, to change the character of the house so as to take it out of the classification of a tenement house. It was testified that the conversion application was granted on or about November 4, 1927.

Plans for the changes and alterations necessary to remove the violation were thereupon drawn up by defendant's architects.

The architects' fees were paid by the plaintiff. The alteration costs were likewise paid by the plaintiff. The alterations were completed on or about February 16, 1928. A certificate of occupancy was thereupon issued. The legal effect of the alteration of the premises and the consequent removal of the violation order was to make permissible the use of but fifteen rooms for sleeping purposes, although the use of the remaining rooms for residential purposes (excluding sleeping purposes) was not thereby inhibited. Within the literal intendment of the lease, however, the premises could still be "used in the business of subletting the apartments thereof, furnished or unfurnished, for residential and living purposes."

In March, 1928, subsequent to the conversion of the premises, plaintiff paid to the defendant rent for the month of March, together with certain water charges and assessments. Apparently the conversion of the premises had made serious inroads on plaintiff's ability to profitably operate the premises as a rooming house. She bitterly protested to defendant the hardship of paying $457.50 per month as rent, in view of the fact that but fifteen rooms could be lawfully rented to lodgers for sleeping purposes. The defendant, however, appears to have been adamant in his insistence upon holding the plaintiff to the terms of the lease, and would make no concession in the rental.

Thereafter, in April, 1928, a summary proceeding based upon the non-payment of rent was instituted in the Municipal Court by the defendant against the plaintiff. On the return date of the precept, the plaintiff appeared and consented to the making of a final order and the issuance of a warrant against her. A final order awarding possession to the defendant was made on April 15, 1928. The warrant was issued on April 26, 1928, and was executed on April 30, 1928. Plaintiff was thereupon evicted.

Subsequent to her removal from the premises, plaintiff instituted an action in the Supreme Court, New York county, against her immediate assignor, for breach of warranty and fraud, based upon an alleged representation that the premises could be lawfully used as a rooming house. She recovered judgment against the defendant in the Supreme Court action for $2,200.

Thereafter the present action was instituted. Though in form the action was for money had and received, it is in essence to recover the $900 deposited as security with the defendant. The defendant has counterclaimed for two months' rent on the basis of that provision of the lease under which plaintiff's liability for rent survives summary eviction.

It is apparently the theory of the plaintiff that there has been a

failure of consideration, and that she is, consequently, entitled to a return of the deposit. But whatever her theory be, it is clear that she has failed to establish any case against the defendant requiring the return of the deposit.

There is no covenant expressed in the lease warranting that the premises in question could lawfully be used for a rooming house. Indeed, the premises were not leased for that purpose. The lease contemplated that the premises should be used " in the business of subletting the apartments thereof, furnished or unfurnished, for residential and living purposes." Even if the lease should be construed as a demise for the purpose of conducting a rooming house, a covenant that the premises were suitable for rooming purposes could hardly be implied. (*Mulligan* v. *Fioravera*, 228 App. Div. 270; affd., 255 N. Y. 539; *Widmar* v. *Healey*, 247 id. 94, 96.)

The original tenant and the defendant were competent to formulate the terms of their agreement. Plaintiff, as assignee, through mesne assignments of the original tenant, is bound by the terms of the lease precisely to the same extent as was the original tenant. She claims that the rider on the lease, initialed by the original tenant, as to the removal of the violation existing at the time of the making of the original lease, did not come to her attention. Though this may possibly be attributable to the conduct of one of her predecessors in title, it can hardly be laid to the door of the defendant. He is not charged with any fraud or overreaching. It is not claimed that he made any representations. His sole participation in the transaction of the assignment by Rodman to the plaintiff was the execution of a written consent to the assignment.

Though the predicament of the plaintiff might merit sympathy, it is impossible to escape the conclusion that the lease means precisely what it says, and must be enforced according to its terms.

Plaintiff, as assignee of the lease, was bound by that provision thereof which obligated her to " make all repairs, both interior and exterior, structural changes and replacements to the building," and to " execute and comply with the  *  *  *  orders, regulations and requirements of the  *  *  *  City government, and of any and all [its] departments and bureaus applicable to said premises  *  *  *." The clause with respect to the repairs and structural changes must be read harmoniously with the clause requiring compliance with the orders and regulations of the municipal authorities. So read, the intent of the lease is clear in its requirement that the removal of violations placed against the premises was an obligation

cast upon the tenant, and not the landlord. (*Mulligan* v. *Fioravera, supra.*)

Though the violation in question appears to have been placed upon the premises prior to the execution of the lease, I am nevertheless satisfied that the rider attached to the lease effectually incorporated the obligation to remove the pre-existing violation, in the agreement of the parties.

Moreover, even were the lease deemed to be ambiguous in its intendment with respect to the alterations made necessary in the situation at bar, the voluntary shouldering of the burden of the cost of alterations, by the plaintiff, would constitute a persuasive construction on her part that the obligation so to do was indeed her obligation. (Cf. *Mulligan* v. *Fioravera, supra.*)

I do not regard as a determinative circumstance the fact of the recovery by plaintiff of the judgment in the Supreme Court action against Harry Rodman. That was an action solely between the plaintiff and her immediate assignor. It could not have contemplated the recovery of the sum deposited with the defendant under the lease, for the obligation to return the deposit was purely a contractual one, and existed only by force of the lease between the defendant and the original tenant or her privies by assignment. It matters not for the purposes of the decision of this case, whether in the Supreme Court action an erroneous measure of damages was applied to compensate the plaintiff in that action, or indeed whether, as defendant here claims, it is mathematically demonstrable that the amount of the present deposit was there allowed as an element of the damage. An action to recover the deposit was one which could only be prosecuted against the defendant, or against one who had assumed the obligation to return the deposit. The present defendant was not a party to the Supreme Court action. The outcome of the action in the Supreme Court could not remotely affect or alter defendant's obligation with respect to the return of the deposit. His argument that plaintiff's suit in the Supreme Court proceeded upon an irrevocable election of inconsistent remedies merits little attention beyond the self-evident observation that the action by this plaintiff against her assignor in the Supreme Court, based upon fraud or breach of warranty, was wholly consistent with the reservation of her right to thereafter prosecute this action against her landlord for the recovery of the deposit.

The argument that there was a failure of consideration is without merit. The lease specified that the premises were to be used " in the business of subletting the apartments thereof, furnished or unfurnished, for residential and living purposes." Despite the existence of the violation at the time the lease was entered into, the

premises could lawfully be used for the purpose expressed in the lease. That the original tenant (and the plaintiff) might have intended to use the premises for a rooming house is of no consequence in measuring the legal liability of the parties. That plaintiff actually did use the premises as a rooming house, before the violation was removed, is likewise immaterial. The demise was for a lawful purpose. No legal impediment restricted the literal enjoyment of the premises precisely as contemplated in the lease. Defendant complied with his part of the lease. He did no act violative of his covenants. What occurred thereafter was through no fault of his. Plaintiff can hardly assert that she deviated from the legally permissible use of the premises only at the risk of the defendant, who in the first instance had ceded the premises for a lawful use. She may not now say that because the public authorities forbade the continuance of the illegal use, that defendant must surrender his bargain based upon a lawful use. Moreover, as has been observed, when the premises were finally converted, and the violation removed, the premises could still be used precisely in accordance with the terms of the lease. It matters not that lawful use would then be unprofitable. A plea that the consideration for a contract has failed is not supported by proof that hardship has resulted from the restriction of the use of the subject-matter to the lawful purpose expressed in the contract.

In any event, it is clear that plaintiff has not established that the condition, predicating return of the deposit, has occurred. The lease provides that the deposit should be returned " after the time fixed as the expiration of the term herein, provided the tenant has fully and faithfully carried out all of the terms, covenants and conditions on her part to be performed." The dispossession of the plaintiff for non-payment of rent obviously rejects the notion of such compliance. Moreover, the survival clause in the lease, continuing liability for rent, despite eviction, reasonably contemplates the retention of the fund deposited for security until the expiration date specified in the lease.

Complaint dismissed; judgment for defendant on the counterclaim for $915. Ten days' stay.