160 So. 220

## PAN AMERICAN PETROLEUM CORPORATION v. PARKER.

### 7 Div. 308.

Supreme Court of Alabama.

Feb. 28, 1935.

Rehearing Denied March 28, 1935.

Cabaniss & Johnston and L. D. Gardner, Jr., all of Birmingham, and Hardegree & Dempsey, of Ashland, for appellant.

M. P. Kelley, of Lineville, for appellee.

THOMAS, Justice.

The submission in this case was upon a motion to strike the bill of exceptions and on the merits.

We have examined the transcript and hold there was no violation of the rule in the preparation of the bill of exceptions. Woodward Iron Co. v. Herndon, Adm'r, 130 Ala. 364, 375, 376, 30 So. 370; Louisville & Nashville Railroad Co. et al. v. Hall, 131 Ala. 161, 32 So. 603; Long v. Seigel, 177 Ala. 338, 58 So. 380; Factors & Mill End Distributors, Inc., v. Rosenthal, 229 Ala. 644, 159 So. 72.

The motion to strike the bill of exceptions is denied.

The facts, briefly stated, are: That Bradford leased from the plaintiff a filling station known as the Pan American Filling Station; that the contract was of date of August 28, 1929, and stipulated that the lease was to commence the 1st day of September, 1929, and terminate on the 31st day of August, 1934; that the lessee was to pay a rental of $30 per month, falling due on the first day of each month for that time, for which were executed sixty promissory notes, each for the amount of $30, falling due, respectively, on the first day of each month as stipulated for in that lease.

The evidence further shows that Bradford, as Parker's lessee, took possession on the date indicated therefor, and later subleased the same property to the defendant.

In the lease from Parker to Bradford there was no inhibition against subletting the premises. The lease of date of September 1, 1930, covering the same property, was in evidence, and provides, among other things, that the property is "now owned (leased) and operated by said first party (Isaac B. Bradford) as a filling station from the 1st day of September, 1930, to the 31st day of August, 1934, at a monthly rental of a sum equal to one cent for each gallon of Pan Am gasoline and Pan Am Ethyl gasoline sold by second party (Pan American Petroleum Corporation) at said premises during the preceding month, payable on the tenth day of each month during the term"; that the "second party (Pan American Petroleum Corporation) reserves the right to terminate this lease at any time by giving to first party (Isaac B. Bradford) 30 days' written notice of its intention to so terminate said lease. Second party (Pan American Petroleum Corporation) may credit said rent against any sums owing by first party (Isaac B. Bradford) to it, and notice of such credit shall constitute payment hereunder"; that Bradford agrees to assign to defendant his license, consent, and permits during the term of the lease, and all renewals and extensions thereof made in his name, to maintain and operate the business; to pay all general and special taxes and assessments that may be levied or assessed against said premises, and any and

all license fees, occupation taxes, and other taxes imposed upon the business conducted on the premises; that the premises shall remain the sole property of the defendant, and, at the expiration of this lease by lapse of time or otherwise, the defendant shall have the right at any time within 30 days after such termination to enter upon and remove any equipment by it at any time placed thereon; that, if Bradford shall default in the payment of any rent due his landlord, the defendant *"may, at its option, pay said rent* to first party's landlord and the amount or amounts so paid shall be credited upon the rent herein reserved to the same extent as if said sum or sums had been paid to first party." (Italics supplied.)

It is further stipulated that, if defendant default in the payment of rent for 30 days, after written notice given by Bradford, the latter may terminate the lease to defendant and repossess the premises.

Following the signatures to the lease appears the consent of Parker, purporting to be signed by him; but this signature he denied.

After the execution of this sublease, defendant's agent, McSwain, brought the instrument to plaintiff for signature, and he declined to consent thereto, or to sign the assent prepared for his signature.

Mr. Bradford testified that, after his lease to defendant was executed, McSwain, as defendant's agent, entered into a contract with plaintiff (Parker); the substance thereof being: "That should Mr. Parker fail to receive his rent that he was to notify the Pan American Petroleum Corporation within thirty days so that they would have an opportunity to pay the rents and hold the contract in force." The witness testified further that "Mr. Parker signed that agreement"; that McSwain "said he would take up my contract and make it a legal proposition, since my contract guaranteed a payment of $30.00 a month, that in case the operator should fail to pay the rent, he was to notify the Pan American Petroleum Corporation within thirty days of the default in the payment and give them an opportunity of paying the rent and keeping the lease in force. * * * He said it would guarantee the payment of the rents by the Company in case the operator failed to pay them."

The plaintiff, as a witness, testified: "The contract was written. I was sitting at my desk busy and Mr. McSwain came and threw it down on the desk and says: 'Parker sign this thing.' The terms of it were that in case Mr. Bradford failed to pay the rent that I would give the Pan Am Petroleum Corporation thirty days' notice so they would have the opportunity to pay the rents and keep the lease in force. That was all the substance of it, the best I recollect. That is not my signature that you show me. I would not sign that thing (referring to what purported to be his signature on the lease between Bradford and the defendant.) From the first day of September, 1929, to the first day of September, 1930, Mr. Bradford and different ones who operated the station paid me the rents on this property. Mr. Upchurch was the fellow that was operating it. I had. no lease with Mr. Upchurch, you see the way they run that, was the fellow who operated the station would pay me every month. Of course it came through their agent who ran the station. The last payment made to me was in May, 1932. These are the notes which were executed by Mr. Bradford to me in payment of the rent for that property."

This last or alleged contract is not in evidence.

Appellant's attorneys thus recite the evidence to be to the effect that McSwain had authority to make leases and any contract that the Pan American Petroleum Corporation wanted to make; that Bradford never knew of him making any other contract guaranteeing one man the payment of another man's rent, and McSwain explained to him that that was the only lease they had in this territory like that; that plaintiff nor Bradford had ever seen McSwain's commission or his written authority; that plaintiff had heard the state manager talk to McSwain in the office in Birmingham. The plaintiff asserted that he knew McSwain had authority to execute contracts to bind the company by the papers he executed; had seen him take leases that were approved by the company "on some occasions." The rent notes were paid to plaintiff by the operator of the station and Bradford until the note due July 1, 1932, and those due July, August, and September, 1932, were not paid. Plaintiff took possession of the premises the latter part of September or the 1st of October, and leased the property to the Gulf people for a rental of $20 a month beginning October 1, 1932.

Defendant attempted to show that it paid one cent a gallon to the operator of the station for rent for the months of July and August, 1932, but plaintiff's objection was sustained to the question and exception reserved. Defendant offered testimony that McSwain was a salesman and a special representative,

and his duties were just general sales duties; that he had authority to take applications for leases and submit them to the home office for approval. He did not make any contracts for the sale of products; he did not have that authority.

The law on this phase of the case is that a contract, guaranteeing the payment of rent for 4 years in the future, is a contract not to be performed within one year from the making thereof, is a promise to answer for the debt or default of another, and is void under the statute of frauds where the writing does not express the consideration (section 8034, Code of 1923; Dilworth et al. v. Holmes Furniture & V. Co., 183 Ala. 608, 62 So. 812, cited in 85 A. L. R. 1184, 1185); and that a guaranty contract is void under the statute of frauds where the agent executing same on behalf of the corporation is not authorized in writing to so contract for the principal (Whaley v. Wynn, 208 Ala. 342, 95 So. 16).

It is then necessary that we inquire if plaintiff was entitled to recover in any event on the pleading and evidence before us. Stephens v. Walker, 217 Ala. 466, 117 So. 22; Kelly v. Hanwick, 228 Ala. 336, 343, 153 So. 269; Britt v. Daniel, ante, p. 79, 159 So. 684.

In Indian Refining Co. v. Roberts, 97 Ind. App. 615, 181 N. E. 283, 285, is the statement of a distinction between an assignment of a lease as a subletting and the rights or liability thereunder. The court said: "The general principle as held by all the authorities is that, where the lessee transfers his whole estate, without reserving to himself a reversion therein, a privity of estate is at once created between his transferee and the original lessor, and the instrument is in law an assignment, and the latter then has a right of action directly against the transferee on covenants running with the land, one of which is that to pay rent; but, if the lessee transfers the premises reserving or retaining any reversionary interest, however small, the privity of estate between the transferee and the original landlord is not established and the transferee occupies then as a subtenant. In such a case the original landlord has no right of action against the transferee of the lessee, there being neither privity of contract nor privity of estate between them. Sexton v. Chicago Storage Co. (1889) 129 Ill. 318, 21 N. E. 920, 16 Am. St. Rep. 274; 2 Thompson on Real Property, p. 491, § 1372. * * * Appellant cites and relies very strongly upon the case of Dunlap et al. v. Bullard (1881) 131 Mass. 161, 163."

This well-recognized distinction is observed in this jurisdiction. Johnson v. Thompson, 185 Ala. 666, 64 So. 554. In Bancroft v. Vizard, 202 Ala. 618, 81 So. 560, the Massachusetts rule (Dunlap et al. v. Bullard, 131 Mass. 161) was adhered to, to the effect that, where a lessee sublets, reserving to himself a reversionary interest, the transaction is that of a sublease, as distinguished from an assignment of a lease; that a sublessee is not liable to the original lessor on the covenants to pay rent reserved in the original lease. Cesar et al. v. Virgin et al., 207 Ala. 148, 92 So. 406, 24 A. L. R. 715; Johnson v. Moxley, 216 Ala. 466, 113 So. 656.

It is without question that, in the lease from Bradford to the defendant the lessor reserved for himself the right of termination of the lease and repossession of the premises for reasons stated.

The two theories of plaintiff's complaint were: First, that upon a contract (embodied in counts 1 and 2) for payment of the rents reserved in Parker's lease to Bradford; and, second, that (embodied in counts 3, 4, and 5) which rested upon an assignment or subletting of the entire term, which is urged as amounting to an assignment subjecting the assignee (defendant) to liability to pay the rent of $30 per month, reserved in Bradford's lease to plaintiff.

As we have indicated, the alleged contract from defendant to plaintiff is not in evidence, and the testimony by which it is sought to be established, according to plaintiff, is as we have heretofore set out; and that of Bradford as a witness was to like effect, being, in substance, that, if Bradford failed to pay the rent, notice would be given by Parker to defendant, so the latter *"would have the opportunity to pay the rent* and keep the lease in force"; or, as stated by another witness, "so that they (defendant) would have an opportunity to pay the rent and hold the contract in force." This did not show a binding contract for the payment of rent by the defendant, or that defendant should stand for a default in payment by Bradford. It was merely an option that defendant, on notice of default, might pay the rent and keep the contract in force.

If it be conceded that McSwain entered into a written contract or guaranty, as shown by plaintiff's evidence, it was void under the statute of fraud. We have indicated that it was a *mere promise*, not an original undertaking by which defendant was bound to the payment, or making good the payment of the rent by Bradford. Byrd v. Hickman, 159

182

Ala. 505, 48 So. 669; Clark & Wadsworth v. Jones, 85 Ala. 127, 4 So. 771. If it were a guaranty not to be performed within a year, it is not shown that there was compliance with the statute of frauds. Whaley v. Wynn, 208 Ala. 342, 95 So. 16; Dilworth et al. v. Holmes Furniture & V. Co., 182 Ala. 608, 62 So. 812.

Adverting to the evidence, McSwain's authority to contract in the premises and bind defendant to payment of Bradford's rent on his default is not established. He had no such implied authority as a mere sales agent.

The case should be retried. The judgment of the circuit court is therefore reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.