## HOUSTON v. DRAKE.
### No. 8719.

Circuit Court of Appeals, Ninth Circuit.
June 27, 1938.

Cleon T. Knapp, James P. Boyle, and B. G. Thompson, all of Tucson, Ariz., for appellant.

George R. Darnell, Samuel L. Pattee, and Lawrence V. Robertson, all of Tucson, Ariz., for appellee.

Before WILBUR, MATHEWS, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

The appellant is the voluntary liquidating agent of the Consolidated National Bank of Tucson, appointed in pursuance of the provisions of R.S. § 5220, 12 U.S.C.A. § 181, by vote of two-thirds of the stockholders of the bank. The resolution appointing appellant was passed April 15, 1935, and on that day he gave the appellee notice that he rejected and recognized no further liability under a lease hereinafter referred to. Subsequently, he brought this action against the appellee, who is the owner of the leased premises, for a declaratory judgment determining the rights of the bank in liquidation, and of the owner of the premises under and by reason of the terms of the lease which he had rejected. The appellee answered and set up a lease and asked for judgment for all rentals due up to the time of the filing of the answer and thereafter to be due under the terms of the lease and declaring the lease a binding 99-year obligation against the bank.

The District Court decreed that the lease was valid and subsisting and that the assumption of the obligations thereof by the Consolidated Bank "is valid and binding upon said the Consolidated National Bank and upon its liquidating agent." It gave judgment for rents due and payable before the commencement of the suit and directed that appellant pay such amounts in addition to amounts due under the lease for certain repairs and taxes.

The leased premises were those formerly occupied by the Arizona National Bank of Tucson as its banking premises. On February 9, 1925 an agreement was entered into between the Arizona National Bank of Tucson, hereinafter referred to as the Arizona Bank, and the bank in liquidation, which we will hereinafter refer to as the Consolidated Bank, wherein the Arizona Bank transferred most of its assets, but not the lease, to the Consolidated Bank, and the Consolidated Bank assumed all the obligations and liabilities of the Arizona Bank. This agreement also provided that the Consolidated Bank had the option to take over the lease if it so desired.

In pursuance of this agreement, on May 1, 1925 the Consolidated Bank entered into a written agreement with the Arizona Bank and the appellee whereby the Arizona Bank assigned its lease to the Consolidated Bank and the appellee, owner of the premises, reduced the rent therein reserved for the years 1925 to 1932, and the Consolidated Bank agreed to assume the lease and pay the rent therein reserved to the appellee.

The appellant contends that the assumption of the lease by the Consolidated Bank was ultra vires and that he had a right as liquidator to reject the lease for that reason, and also for the reason that as liquidator he had the power to disaffirm the lease and thus relieve the assets of the bank in his hands from the burden thereof.

The powers of a liquidator are not clearly defined by statute. As originally enacted (June 3, 1864, ch. 106, § 42, 13 Stat. 112) the act only provided that "any association may go into liquidation and be closed by the vote of its shareholders owning two-thirds of the stock." This provision was incorporated in the Revised Statutes as § 5220. The decisions with reference to the powers and duties of a liquidating agent voluntarily appointed by the stockholders of the bank which have been brought to our attention, all antedate the amendment to § 5220, R.S., adopted August 23, 1935 (ch. 614, § 317, 49 Stat. 712, 12 U.S.C.A. § 181). These decisions have established an analogy between the obligations of a voluntary liquidating agent to those of a receiver appointed by the comptroller under ch. 156, § 1, 19 Stat. 63, passed June 30, 1876, 12 U.S.C.A. § 191.

In the view we take of the case it will be unnecessary for us to consider the authority of appellant as liquidator to disaffirm a lease by virtue of his powers and duties as liquidator other than to hold, as we do, that he stands in the shoes of the bank and has the rights of the bank to disaffirm the unexecuted portion of an ultra vires contract entered into by the bank. That is to say, we hold, for reasons now to be stated, that the agreement of the bank entered into on May 1, 1925, was ultra vires and void as to the unexecuted part of the lease and that upon the disaffirmance of the lease by the liquidator and the surrender of the premises to the appellee, or the offer so to do, the obligations under the lease as to rents not yet accrued, were terminated.

■ One argument of the appellee in favor of the validity of the lease runs somewhat as follows: The Arizona Bank had power to enter into the lease for the purpose of acquiring premises upon which to do business under the provisions of § 29, T. 12, U.S.C.A., which permits a bank to acquire real estate for the transaction of its business; that this act has been amended by striking out the word "immediate" (Act of February 25, 1927, ch. 191, § 3, 44 Stat. 1227), and therefore, the Consolidated Bank might acquire the lease with a view to its future use in the transaction of its business,[1] and that it might use this lease in connection with its duties as executor, administrator or guardian. It is contended further, that at the time it acquired the lease the Tucson Realty & Trust Company, all of whose stock was held by the directors of the Arizona Bank, as trustees for its stockholders, was engaged in doing a trust business, and that the Consolidated Bank acquired the stock in this corporation and it might and did use the leased property for the benefit of this Tucson Realty & Trust Company. Although it has been held that a national bank, under the provisions of 12 U.S.C.A. § 29, supra, may acquire a ninety-nine year lease (Brown v. Schleier, C.C., 112 F. 577; Id., 8 Cir., 118 F. 981; Id., 194 U.S. 18, 24 S.Ct. 558, 48 L.Ed. 857), the difficulty with these propositions is that there is no showing that the Consolidated Bank intended to use this property for the transaction of its business. On the contrary, the evidence shows that the Consolidated Bank owned the premises in which it was conducting its business and occupied them except for a period of nine months when it moved temporarily to the leased premises in order to permit the construction of a new building on its property. It appears that the lease was acquired because it was considered "good business" and because it was thought that a profit could be made by sub-leasing the premises. The Consolidated Bank did in fact collect rent for the premises after assuming the lease. It also appears from the evidence that the Consolidated Bank sold the lease in 1929 for a consideration of $50,000. The outcome of the transaction is not clearly shown by the evidence, but it appears that the Consolidated Bank later took back the leased premises. As to the contention of appellee that the premises were taken over for the use of the Tucson Realty & Trust Company, the stock of which was acquired in 1929, it should be noted that the latter company was a separate entity and its activities cannot be considered as part of the banking activities of the Consolidated Bank. It is clear that the leased property was not taken over by the Consolidated Bank to house its banking activities, and it had no intention of so using it.

For these reasons we hold that the lease was not necessary for the accommodation of the bank in the transaction of its business and that its acquisition was not authorized by the second provision of § 29, T. 12, U.S.C.A., supra.

■ Appellee also predicates the authority of the Bank to take the assignment of the lease upon the provisions of 12 U.S.C.A. § 24, subd. 7.[2] It is argued that one of the incidental powers of a national bank

---

[1] 12 U.S.C.A. § 29 reads as follows:

"A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

"First. Such as shall be necessary for its accommodation in the transaction of its business.

"Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

"Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

"Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it.

"But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years."

Prior to the amendment of February 25, 1927, the second provision of the act read as follows:

"First. Such as shall be necessary for its immediate accommodation in the transaction of its business."

[2] The National Bank Act, among other powers, authorizes national banking associations to exercise "all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title." (R.S. § 5136;

as established by the decisions is to take over the assets of another bank upon a pledge to secure its assumption of the obligations of the bank whose assets are thus acquired. Wyman v. Wallace, 201 U.S. 230, 26 S.Ct. 495, 50 L.Ed. 738; George v. Wallace, 8 Cir., 135 F. 286; American Nat. Bank v. Commercial Nat. Bank, 5 Cir., 254 F. 249; Emery & Co. v. Wilkinson, 10 Cir., 72 F.2d 10; Hays v. Wilkinson, 10 Cir., 72 F.2d 201; Wannamaker v. Edisto Nat. Bank, 4 Cir., 62 F.2d 696; Richter v. Laredo Nat. Bank, 62 F.2d 289; Derscheid v. Andrew, 8 Cir., 34 F.2d 884; Chase v. Hall, 9 Cir., 30 F.2d 195; Harris v. Briggs, 8 Cir., 264 F. 726; Reconstruction Finance Corp. v. Central Republic Trust Co., D.C., 17 F.Supp. 263, 300. It is contended, therefore, that as the assumption of the lease by the Consolidated Bank was pursuant to the agreement of February 9, 1925, between the Consolidated Bank and the Arizona Bank, such assumption was within the power of the Consolidated Bank. Under the terms of this agreement the assets transferred to the Consolidated Bank were to be placed in a liquidation account and upon liquidation and payment of the debts of the Arizona Bank the remaining assets were to be reconveyed to the Arizona Bank.

It is further contended by appellee that the legal effect of the agreement of February 9, 1925, was to create a creditor debtor relationship between the Consolidated Bank and the Arizona Bank; that in effect the Consolidated Bank loaned the Arizona Bank money to pay its liabilities and took as security a pledge of the assets of the latter bank. Except as it may have reference to the lease, we may assume that the transaction of February 9, 1925 was in legal effect a loan by the Consolidated Bank to the Arizona Bank with a pledge of the assets of the latter bank as security. As to the lease, however, a different situation is presented. Even though it be assumed that the lease was assigned to the Consolidated Bank pursuant to the option given that bank in the agreement of February 9, 1925, it is clear that by the transaction of May 1, 1925 the Arizona Bank was discharged from all obligations arising from privity of estate and the Consolidated Bank became liable as tenant under the lease. Willison v. Watkins, 3 Pet. 43, 7 L.Ed. 596; In re Bayley, D.C., 177 F. 522; McLeran v. Benton, 43 Cal. 467; Potts-Thompson Liquor Co. v. Potts, 135 Ga. 451, 69 S.E. 734; Campbell v. Short, 65 Okl. 312, 166 P. 438; Forrest v. Durnell, 86 Tex. 647, 26 S.W. 481; Johnson v. Thompson, 185 Ala. 666, 668, 64 So. 554; Essex Lunch v. Boston Lunch Co., 229 Mass. 557, 118 N.E. 899; Speed v. Jay, Tex.Civ.App., 267 S.W. 1033; Fanta v. Maddex, 80 Cal.App. 513, 252 P. 630; Machinist v. Koorkanian, 82 N.H. 249, 132 A. 256; Gusman v. Mathews, 29 Ohio App. 402, 163 N.E. 636; Dumontier v. Bailey, 144 Misc. 197, 258 N.Y.S. 409; Pan American Petr. Corp. v. Parker, 230 Ala. 178, 160 So. 220; Walgreen Co. v. Walton, 16 Tenn.App. 213, 64 S.W.2d 44; Williams v. Safe Deposit & Trust Co., 167 Md. 499, 175 A. 331; 68 Beacon St. v. Sohier, 289 Mass. 354, 194 N.E. 303. See 35 C.J. 995, § 95.

The liability of the Consolidated Bank was not only by reason of privity of estate but also by privity of contract because in the tri-party agreement of May 1, 1925, it expressly assumed all the covenants of the lease. Chase v. Oehlke, 43 Cal.App. 435, 185 P. 425; Williams v. Hawkins, 20 Cal.App. 161, 128 P. 754; H. H. Camp Co. v. Pabst Brewing Co., 172 Wis. 211, 178 N.W. 474; Schmidt v. Louisville, etc., R. Co., 139 Ky. 81, 129 S.W. 332, 335; Studebaker Corp. v. Ætna Savings & Trust Co., 7 Cir., 21 F.2d 385; In re Famous Fain Co., 2 Cir., 13 F.2d 529. It may be true that the assignment of the lease by the Arizona Bank to the Consolidated Bank was in pursuance of the option contained in the agreement of February 9, 1925, whereby the Consolidated Bank took over the assets of the Arizona Bank, and that had the assets of the Arizona Bank been sufficient to pay its debts without recourse to the lease it could have compelled a reassignment of the lease from the Consolidated Bank. As between them that question is not free from doubt. However that may be, there

---

July 1, 1922, c. 257, § 1, 42 Stat. 767; Feb. 25, 1927, c. 191, § 2, 44 Stat. 1226; June 16, 1933, c. 89, § 16, 48 Stat. 184; Aug. 23, 1935, c. 614, § 308, 49 Stat. 709. See 12 U.S.C.A. § 24, subd. 7).

National banks have only such powers as are given expressly by federal statutes or by necessary implication therefrom. First Nat. Bank v. State of Missouri, 263 U.S. 640, 44 S.Ct. 213, 68 L. Ed. 486; Texas & Pac. Ry. Co. v. Pottorff, 291 U.S. 245, 54 S.Ct. 416, 78 L. Ed. 777.

is no escape from the proposition that in legal effect the Consolidated Bank, by the assignment of the lease to it and the assumption of the obligations contained therein, by the contract of May 1, 1925 became the lessee of the premises and a reassignment of the lease would not have terminated the liability of the Consolidated Bank arising from privity of contract. Bonetti v. Treat, 91 Cal. 223, 27 P. 612, 14 L.R.A. 151; Wilson v. Lunt, 11 Colo.App. 56, 52 P. 296; Consumers' Ice Co. v. Bixler, 84 Md. 437, 35 A. 1086; Chase v. Oehlke, 43 Cal.App. 435, 185 P. 425, supra; Springer v. Chicago, etc., Co., 202 Ill. 17, 66 N.E. 850. It follows that the transaction of May 1, 1925 cannot be regarded as a mere pledge of the lease by the Arizona Bank as security for a loan authorized by 12 U.S.C.A. § 24, subd. 7, or by 12 U.S.C.A. § 29.

■ It appears that the Consolidated Bank has paid the rentals called for by the lease up to April 1, 1935. As to such portion of the lease as has been fully executed by both parties the transaction must stand. Pullman's Palace-Car Co. v. Central Transp. Co., 171 U.S. 138, 159, 18 S. Ct. 808, 43 L.Ed. 108; Nat. Bank of Commerce in St. Louis v. Francis, 296 Mo. 169, 246 S.W. 326.

■ The purpose of this suit is to have the court determine the liability of the Consolidated Bank under the lease. The appellee by its answer sought to enforce the terms of the lease. As the lease is void because ultra vires of the Consolidated Bank, there can be no recovery on the lease by appellee, and the decree must declare the lease to be void. De La Vergne Ref. Mach. Co. v. German Savings Inst., 175 U.S. 40, 58, 59, 20 S.Ct. 20, 44 L.Ed. 65. The issues are not framed so as to justify a recovery for the reasonable value of the use and occupation of the premises from and after April 1, 1935 to April 15, 1935 when the premises were abandoned by the Consolidated Bank acting through the appellant. The decree should be without prejudice to the rights of the appellee to recover the reasonable value of the use and occupation of the premises for the period of occupation prior to April 15, 1935 for which rent has not been paid. See De La Vergne Ref. Mach. Co. v. German Sav. Inst., 175 U.S. 40, 20 S.Ct. 20, 44 L.Ed. 65, supra. 9 Corpus Juris Sec. 1222, § 667; Logan County Nat. Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35

L.Ed. 107; Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 214, 55 S.Ct. 674, 677, 79 L.Ed. 1393; Rankin v. Emigh, 218 U. S. 27, 30 S.Ct. 672, 54 L.Ed. 915; Jackman v. Continental Nat. Bank, 8 Cir., 16 F.2d 728, 51 A.L.R. 336; Jaskow v. Harriman Nat. Bank & Tr. Co. of N. Y., 159 Misc. 39, 287 N.Y.S. 143; Rodgers v. First Nat. Bank, Tex.Civ.App., 68 S. W.2d 371; First Nat. Bank v. Stokes, 134 Ark. 368, 203 S.W. 1026; Nat. Shawmut Bank of Boston v. Citizens' Nat. Bank of Boston, 287 Mass. 329, 191 N.E. 647; Nowell v. Equitable Trust Co., 249 Mass. 585, 144 N.E. 749.

Decree reversed.